(No. 40094.—▮▮▮▮▮▮)

BREWSTER MOTOR COMPANY, INC., Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(SUE M. FEEZOR, Admx., *et al.,* Appellees.)

*Opinion filed January 19, 1967.*

Thomas Q. Keefe, of East St. Louis, and August L. Fowler, of Marion, for appellant.

Harris, Holbrook & Lambert, of Marion, for appellees.

Mr. Justice Kluczynski delivered the opinion of the court:

This is an appeal from an order of the circuit court of Williamson County affirming the decision of the Industrial Commission awarding compensation for injuries and death sustained by James L. Feezor as a result of a felonious assault upon him.

The sole question presented on review is whether the assault and resultant injuries and death arose out of Feezor's employment. The evidence before the commission indicates that for a number of years Feezor, as an automobile salesman, sold new and used cars and trucks for the Brewster Motor Company in Herrin, Illinois. From time to time he had business dealings in buying and selling automobiles with Dewey Thompson, a coal miner, who resided with his wife in a trailer at Johnston City, Illinois. The first

transaction was in 1958. Thereafter, Thompson purchased three or four other cars through Feezor, the last one a Mercury, and a used truck on March 30, 1963, about one year prior to the altercation (March 19, 1964) that resulted in the death of both Feezor and Thompson. At the time of the incident Feezor was 45 years of age, married and had two minor children.

In February or early March, 1964, Thompson decided to look into the possibilities of purchasing a "pick-up" truck and a "camper" combination. He tried several automobile agencies including Brewster and on two or three occasions met with Feezor at Brewster's place of business, the last being a week prior to the fatal shooting.

The Thompsons, at this time, were experiencing some family discord which Mrs. Thompson described as a personal problem involving the daughter and her father, Dewey Thompson. She testified that he had been placed under a peace bond and "spent half of his time staying at his parents' home which was on the next corner" and that "for a week or ten days before he died we had been trying to solve our problems and decide what to do and he did more or less stay there at the trailer with me and my son." She also testified that her daughter, who evidently did not live with them, had an accident with the Mercury car and, while it was being repaired at Brewster's, Feezor allowed her (Mrs. Thompson) the use of his private automobile to go back and forth to the court house in connection with her "husband and daughter".

On the morning of March 19, 1964, Thompson arose at the usual time and prepared to go to work at 7:30 a.m. He returned at 8:00 a.m., saying he did not think that he wanted to work that day as he wasn't feeling well. He stayed home 5 or 10 minutes, then left. He returned an hour and a half or two hours later carrying a brown bag which, it developed later, contained a spiral type note book

in which he had written a "murder suicide note." Thirty minutes later he ordered his wife to call Feezor at Brewster's. She did but Feezor was not in and she left word that he call back. When Feezor called, she, under instruction of Thompson, told him to come over "to talk to us" and hung up. During the half hour before Feezor's arrival at the trailer she tried to talk to Thompson as she had done "before." He was talking but wasn't making good sense. He also had two guns on the coffee table and one shoved in the back part of his pants.

Feezor arrived with his son Jimmy in a "pick-up" truck of the type and color Thompson had previously viewed and discussed at Brewster's. The son remained in the truck and Feezor, after knocking, entered the trailer. He said: "Are you kids ready to trade?" Thompson swore and told his wife "get my dog and get out of here." She heard nothing more but saw Thompson kick Feezor and when she was leaving the trailer she heard shots. Feezor's son ran into the trailer and saw blood on his father's face and both men grappling over a shot gun. When Feezor yelled at his son to kill "him" the son knocked Thompson down and killed him with a shot from the gun. Feezor had suffered several bullet wounds and died a few minutes later in the trailer.

Thompson's murder-suicide note discovered at the scene of the killings, read as follows:

"To Emma Lou Thompson or McAlpin

*This is the end.* As you know I have written letters saying one thing and another. I have truly meant everything I have ever said or written. Which is my true self? *To Thine Own Self Be True.* I don't know how! The world would, as I say, call me a mad man. I really don't know myself. I sought your help *first* because I love you *most.* I truly gave my heart and soul to God our maker to love him and beg forgiveness of my sins and yours. When I take my troubles and sorrows and hurts to the supreme one and he can not blot out my *hurt* and *sorrow.* What can I do. I am back to depending on my own judgment to try to think what to do. As I have told you. I can *not hurt you* any more. I surely can *not* end your days on this earth as you know, and why. I know you are *prepared* to go but the *Love* for *God, I misplaced* in you.

I must in my own mixed up way *deal* with *Feezor. Surely you do understand that.* We *male mortals* from the beginning, did not try, but *did* take away from *God All Mighty* the right and power to deal with such a terrible hurt and Pride.

*I am, I know, Damning my self to Hell for the love* and *Trust* I put in *you. I know* it is *not worth it,* but I *can not help myself.*

*Go, I Beg You to Heaven above* and you know how for my sake.

Dewey."

Mrs. Thompson testified she never had any intimate relations with Feezor in her lifetime and that all contacts with him stemmed from business dealings. She did say that her husband, whom she characterized as quarrelsome, abusive and high-tempered, had accused her of having relations with Feezor. "He did accuse me, not only with Jimmy Feezor but of his brother-in-law, of his own father, and of other people at other times. That wasn't the first and only time."

Walter Williamson, Brewster's general manager, testified that on that day in question at about 11:30 a.m. he saw Feezor servicing the truck in the driveway, installing hub caps and checking the oil, gas and water. In addition, Mrs. Winifred Moeser, the office supervisor and bookkeeper, testified that on that day she saw Feezor between 11:30 and 12:00 A.M. leave Brewster's and he told her: "I'm going to take this pick-up to Johnston City to show it to a customer." Finally, Jimmie Feezor, the son, testified that his father picked him up near their home and had him ride with him. He told him that he was taking the truck to Johnston City to show it to a man over there. "He said he liked this particular color."

It is the contention of the appellant that the Industrial Commission and circuit court committed error in finding the accidental injuries and resulting death arose out of the employment of James L. Feezor as an automobile salesman with the Brewster Motor Company, and that inasmuch as the "material operative facts are not in dispute and the issue

is one of law, this court is not bound by the findings or decisions of the Industrial Commission or the Circuit Court."

The appellees charge that the facts in the case are in controversy and, having been found against the appellant by the commission, the findings are not against the manifest weight of the evidence and should not be disturbed by this court.

The question whether or not an injury arose out of and in the course of employment is usually one of fact for the Industrial Commission to decide, and its findings in such respect will not ordinarily be disturbed on judicial review, particularly where the evidence on the issue is conflicting or susceptible of different reasonable inferences. *Johnson & Johnson* v. *Industrial Com.* 32 Ill.2d 316; *Huddleston* v. *Industrial Com.* 27 Ill.2d 446.

Herein, the evidence presented is susceptible of several different inferences with regard to the cause of Thompson's felonious assault on Feezor. The latter's death could be said to have resulted from a purely personal risk, from a risk common to the public at large, or from a risk incidental to Feezor's employment. The commission, after weighing the evidence, drew the latter inference and found that Feezor's death arose out of and in the course of his employment.

In *Farace* v. *Industrial Com.*, 34 Ill.2d 80, we held that it is within the sphere of the Industrial Commission to draw reasonable inferences and conclusions from competent evidence, both direct and circumstantial, and that we would not discard permissible inferences so drawn by the commission merely because other inferences might be drawn by us. And in *City of Rockford* v. *Industrial Com.* 34 Ill.2d 142, we held that although the evidence in support of an award is hardly of the most satisfactory kind, we are reluctant to substitute our judgment in these matters for that of the commission; that we do not weigh conflicting evidence, nor

discard permissible inferences drawn by the commission and draw opposite ones.

The commission's finding that Feezor's injuries and death arose out of his employment represents the resolution of a mixed question of law and fact, and the resolution of this type of question should not be disturbed on review unless it is against the manifest weight of the evidence. *Fransen Construction Co.* v. *Industrial Com.* 384 Ill. 616; *Murrelle* v. *Industrial Com.* 382 Ill. 128.

In the case before us there is sufficient evidence in the record to support the commission's finding that Feezor's injuries and resultant death arose out of his employment. Under the Illinois Workmen's Compensation Act, an injury is said to arise out of the employment when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury. However, the mere fact that an employee is present at the place of injury due to his employment does not satisfy the requirements of the act unless the injury itself is a result of some risk of the employment. (*Illinois Country Club, Inc.* v. *Industrial Com.* 387 Ill. 484.) In other words, an injury which cannot be fairly traced to the employment as a contributing, proximate cause, and which comes from a hazard to which the employee would have been exposed apart from his employment, does not arise out of the employment, as the causative danger must be peculiar to the work and not common to the neighborhood and the public. *Spiller* v. *Industrial Com.* 331 Ill. 401; *Chicago Hardware Foundry Co.* v. *Industrial Com.* 393 Ill. 294.

In the instant case, Feezor's employment and his duties as salesman forced him into repeated contact with Thompson, as customer, and his wife. There is no evidence that Feezor had any association, other than business, with the

Thompsons. Evidently, the commission found that it was these contacts which aroused the irrational suspicions of Thompson and focused them upon Feezor, and that it was these suspicions that culminated in Thompson's killing Feezor. In this manner, Feezor's employment contributed to his injuries and death, and such contribution constitutes a sufficient causal connection between work and accident within the degree of causation necessary to satisfy the "arising out of" requirement of our Workmen's Compensation Act.

We hold that the commission's finding that Feezor's injuries and death arose out of his employment was not error. Accordingly, the judgment of the circuit court of Williamson County, confirming the decision of the Industrial Commission, is affirmed.

*Judgment affirmed.*