584

CANNON CONSTRUCTION COMPANY, Appellee, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Ruby Jackson *et al.,* Appellants.)

*Opinion filed January 19, 1968.*

DURR & DURR, of Edwardsville, for appellants.

THOMAS Q. KEEFE, of East St. Louis, (FRANK E. DE PAULI, of counsel,) for appellee.

Mr. JUSTICE HOUSE delivered the opinion of the court:

The Industrial Commission confirmed an arbitrator's award to the widow and minor child of James Jackson killed in an accident allegedly arising out of and in the course of his employment. This appeal is from a reversal of the Commission's decision by the circuit court of Madison County.

James Jackson had been a general superintendent for Cannon Construction Company for about two years prior to his death. He was paid on an hourly basis for a forty-hour week regardless of holidays or rain. In addition, he was reimbursed for use of his own car, he was paid a bonus when the employer "made money" and when he purchased

his last car his employer gave him additional funds to apply toward the purchase price.

The employer was engaged in general contracting. Some of the work was done through its own organization and the balance was subcontracted. As general superintendent Jackson helped lay out the jobs, organized work crews, got materials on location and contacted subcontractors and suppliers. He visited those jobs which he superintended daily and filled out time records of the employees. His working day normally ended about 4:30 P.M., although at times he studied plans at home. His employer on occasion would call him before or after work and he sometimes contacted craftsmen or subcontractors outside of regular hours to report for work. He carried a small metal filing cabinet in his car which contained blueprints and information, and other items belonging to his employer, such as plastic wood and caulking compound. He also carried some small tools of his own. He normally arrived at the company's offices at Wood River at 7:00 A.M. and would confer with Horace Cannon, head of the company, about what was to be done that day. Cannon testified that they always fixed the places where Jackson was to go each day.

On the day of Jackson's death he reported as usual and a routine conference was held. They then visited Jackson's two jobs in Edwardsville and one in Staunton and returned to the office. After lunch Jackson left about 2:00 P.M. informing Cannon that he was going to look over a job in Edwardsville upon which they were going to bid. There is no record of his subsequent movements until 4:45 P.M. Gilbert Zubal, a brick contractor, testified that he told Jackson earlier in the day that he wanted a set of plans on a job which he had subcontracted and which was to be commenced in two or three weeks. Jackson told Zubal he would meet him at the 402 Tavern, located south of the center of Edwardsville where bricklayers and carpenters stopped almost every night after working hours. They met about

4:45, the plans were delivered, they talked about another job and were joined by other bricklayers and carpenters who drank beer with them. Jackson stopped there almost every night. On the day in question he left about 7:30 or 7:45 P.M. and arrived at Body's Tavern on the northern end of Edwardsville approximately 3 miles from the 402 Tavern at 8:00 P.M. He ate a chicken dinner, ordered two fish plates to go and left about 9:00 P.M. He met his death at 9:50 P.M. when his car left the pavement and he was thrown 38 feet beyond the wreckage at a point 3 miles north of Body's Tavern.

It is argued that, because this employee was subject to call at odd hours, the necessity for a great amount of travel on his employer's business, and the other circumstances of his employment, he was killed during the course of his employment and that death arose out of his employment. The evidence showed the deceased to be a valued and trusted employee, but the question is whether there was evidence to support a finding by the Commission that he was in the course of his employer's business at the time and place when and where the accidental injuries were suffered and his death occurred.

There is nothing in the record tending to show any activity by the decedent in behalf of his employer after the conclusion of his conversation with Zubal sometime prior to the latter's departure about 6:30. He visited socially with friends until almost 8 o'clock. He then had dinner in another tavern operated by friends where he customarily stopped approximately every other day. It was almost an hour after leaving Body's tavern that his car left the highway three miles away while travelling at a speed estimated to have been in excess of 100 miles per hour. Although he was with friends all but the last hour of his life (which is not accounted for) there is no evidence that he transacted any business for his employer subsequent to his conversation with Zubal shortly after 4:45 P.M.

It is argued that this case is similar to *Brewster Motor Co.* v. *Industrial Com.*, 36 Ill.2d 443, apparently because in each the employee's duties required him to travel outside the employer's place of business. That case is clearly distinguishable, however, since it involved an automobile salesman who answered a call from a customer and was killed during the call while in the course of his employment.

The facts here are very similar to those in *Thomas Reed & Son* v. *Industrial Com.*, 36 Ill.2d 612, where there was an hour-and-a-half unexplained period between the last time the employee was seen working and the time of his death six miles away. We there said: "In that period many things could have occurred, but for us to venture to say what did happen or attempt to draw some inferences to support the findings of the Industrial Commission would be pure conjecture and speculation, which we are not permitted." (36 Ill.2d 612, 616.) Here the final unexplained hour was preceded by several hours of conviviality not shown to be connected in any way with the employer's business.

We are of the opinion that there was no evidence from which the Commission could draw a legitimate inference that the decedent was in the course of his employment at the time of his death, and the circuit court of Madison County properly so found. Its judgment is accordingly affirmed.

*Judgment affirmed.*