(No. 41542.-

W.K.I.D. BROADCASTING COMPANY, Appellant, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(Donald Vreuls, Appellee.)

*Opinion filed March 27, 1969.*

BUSCH, HARRINGTON & PORTER, of Champaign, and KLOHR, BRAUN, LYNCH & SMITH, of Chicago, (W. KENNETH PORTER and FRANCIS J. LYNCH, of counsel,) for appellant.

PAUL E. KARLSTROM, of Champaign, and FRANK S. KANELOS, of Brookfield, for appellee.

Mr. JUSTICE WARD delivered the opinion of the court:

W.K.I.D. Broadcasting Company (the Company) appeals to this court from a judgment of the circuit court of Champaign County confirming an award of compensation by the Industrial Commission to Donald Vreuls, the claimant and appellee, for the total loss of use of his left eye which he suffered while in the Company's employ. The question presented is whether the injury to the claimant arose out of his employment with the Company.

On the date of the injury, May 30, 1961, the appellee who was then 27 years of age, was employed by the Company, a radio station in Urbana, as its news director. His outside duties consisted of procuring news information and preparing feature and special news copy, which he would then broadcast. The Company actively encouraged on-the-scene coverage of newsworthy events by the appellee.

The appellee was notified on May 30 by phone at his home that the student water fight, which had become an annual activity at the University of Illinois, had begun. His wife and he, after obtaining a tape recorder from the station, proceeded to the scene of the activity on the campus. The record shows that the appellee's wife had sometimes accompanied him to assist in performing his news duties. The wife had worked for the Company at an earlier period but she was not employed by it at the time concerned here.

Large numbers of students participated each year in the "water fight." Though the course of the activity was not precisely predictable, it appears that this eruption of student energies principally consisted of the opening of fire hydrants, with the students then wrestling each other into the flooding waters and generally splashing and soaking each other. The appellee and his wife followed this action for several hours as it shifted from point to point in the campus area. The appellee was tape recording crowd sounds, conducting student interviews and gathering the comments of spectators.

At about 9:00 P.M. the remaining activity was centered

between 3rd and 4th Streets and Armory in Champaign. The appellee's wife, he and an acquaintance, Phil Madell, took a vantage point on a terrace adjacent to a sorority house on the northeast corner of Third and Armory. The couple was standing next to each other, surrounded by 30 to 50 persons, observing the activity near an open hydrant, when three or four unidentified men attacked them from the rear. A portion of the appellee's testimony related: "one of the attackers sort of knocked me out of the way and grabbed my wife and started down the hill with her. At the same time, I was held from behind apparently under attack myself. So I swung the tape recorder around to get rid of these people, simultaneous with grabbing the back of the sweatshirt of the person that had seized my wife and we all slid down this terrace together." "Sometime within that fall," as the appellee put it, he was struck in the left eye by the man who had seized his wife. As a result his glasses were broken and fragments of glass which lacerated his left eye caused the loss of sight in that eye. His testimony under cross-examination was that the sequence of events was that first, his wife was seized; secondly, he took hold of the sweatshirt of her assailant; thirdly, another person jumped on him from behind; then, all fell struggling and the injury was received. The appellee prefaced this recital of the sequence of events by stating that "we are talking about split seconds" and that "this was almost a simultaneous action."

Phil Madell was the only other person who testified as to the occurrence. Called by the Company his testimony corresponded generally with that of the appellee, except that when the witness was asked whether anyone had assaulted the appellee from behind, he said: "Not to my knowledge. I don't think so, but I really don't know."

That the claimant suffered the injury "in the course of" his employment is not challenged by the Company. However, it does argue that his injury did not arise "out of" his

employment. It charges that the appellèe created a risk of harm personal to himself and unrelated to the employment by his gratuitous introduction of his wife into the employment situation, where an unexplained assault on her led to his defense, whereby he sustained the injury.

The term "in the course of employment" concerns the time, place and circumstances of the injury and the term "arising out of the employment" refers to the required causal link between the employment and the injury. (*Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 329; *Chmelik* v. *Vana,* 31 Ill.2d 272, 277, 278.) Proof that an employee is present at the place where he was injured because of his employment is not by itself sufficient to sustain his burden of proving that the injury arose out of the employment. (*Brewster Motor Co.* v. *Industrial Com.,* 36 Ill.2d 443, 449; *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 329.) However, an injury will be said to arise out of the employment "when, upon consideration of all of the circumstances, there is apparent to the rational mind a causal connection between the conditions under which the work is required to be performed and the resulting injury." (*Brewster Motor Co.* v. *Industrial Com.,* 36 Ill.2d 443, 449; accord, *State House Inn* v. *Industrial Com.,* 32 Ill.2d 160, 163.) Expressed otherwise, an injury fairly traceable to the employment as a contributing, proximate cause qualifies as having arisen out of the employment. (See 36 Ill.2d at 449; 32 Ill.2d at 163-164; *cf. Republic Steel Corp.* v. *Industrial Com.,* 26 Ill.2d 32, 45.) Further, it is sufficient if there is circumstantial evidence leading to a fair, logical and reasonable inference that the disability had its origin in a risk of the employment or was incidental to the nature and conditions of the employment. *Thomas Reed & Son* v. *Industrial Com.,* 36 Ill.2d 612, 615-616; *Rysdon Products Co.,* 34 Ill.2d at 329.

It is the province of the Industrial Commission, of course, to draw reasonable inferences and conclusions from

competent evidence in the record, both direct and circumstantial. (*Brewster Motor Co.* v. *Industrial Com.,* 36 Ill.2d 443, 448; *Rysdon Products Co.* v. *Industrial Com.,* 34 Ill.2d 326, 330,) and as we pertinently observed in *Brewster,* beginning at 448: "The question whether or not an injury arose out of and in the course of employment is usually one of fact for the Industrial Commission to decide, and its findings in such respect will not ordinarily be disturbed on judicial review, particularly where the evidence on the issue is conflicting or susceptible of different reasonable inferences. [Citations] * * * The commission's finding that [decedent's] injuries and death arose out of his employment represents the resolution of a mixed question of law and fact, and the resolution of this type of question should not be disturbed on review unless it is against the manifest weight of the evidence. [Citations]."

In the present case the appellee's duties as a newsman placed him at the scene of the water fight action and subjected him to the risks of that volatile setting. (*Cf. Krawiec* v. *Industrial Com.,* 372 Ill. 560.) He testified that he and his wife had been attacked and as he was both trying to free himself from his attackers from behind and trying to hold the shirt of the man who had seized his wife "we all slid down the terrace together." It was then he was struck by his wife's attacker and he suffered the injury to his eye. There was competent evidence from which it could be found that the incident and injury grew out of and were causally related to a condition of the appellee's employment here, namely, the boisterous crowd. We cannot say that this finding by the Commission was against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Champaign County is affirmed.

*Judgment affirmed.*