(No. 51754

HOWELL TRACTOR & EQUIPMENT COMPANY, Appellee v. THE INDUSTRIAL COMMISSION et al. (John Henry Bauer, Jr., Appellant).

*Opinion filed February 1, 1980.—Rehearing denied March 28, 1980.*

KLUCZYNSKI, J., GOLDENHERSH, C.J., and CLARK, J., dissenting.

Murges and Bowman, of Chicago (George J. Murges and Gerald M. Chapman, of counsel), for appellant.

Klohr, Braun, Lynch & Smith, Ltd., of Chicago (Mark A. Braun, of counsel), for appellee.

MR. JUSTICE UNDERWOOD delivered the opinion of the court:

Claimant filed an application for adjustment of claim under the Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq.*), specifying the loss of his left leg as the basis of his claim. The arbitrator found that the injury did not arise out of and in the course of claimant's employment, and denied compensation. The Industrial Commission reversed, awarding claimant compensation for total temporary disability and for the amputation of the left leg above the knee. The circuit court of Du Page County reversed the Commission, and claimant appealed to this court under Rule 302(a) (73 Ill. 2d R. 302(a)).

Respondent, Howell Tractor & Equipment Company, is in the business of selling, renting, and servicing various types of equipment, mostly heavy equipment such as cranes and bulldozers. Claimant, John Henry Bauer, Jr., had been employed by respondent as a field mechanic for four or five years as of the date of the accident in question.

On July 22, 1975, Bauer and George Hoefle, a coworker, were told by their superiors that a road resurfacing machine had broken down in Logansport, Indiana, on a job site of Orr International, owner of the machine. The machine had been sold by Howell to Orr. The parts to repair the machine were being flown to O'Hare Field in Chicago. Bauer and Hoefle were to pick up the parts at the airport and go to Logansport to repair the machine. Bauer testified later that his usual routine frequently required him to work at locations other than Howell's shop. A company truck was assigned to him permanently in which he carried his own tools and whatever special equipment he needed for the particular job.

In the morning of the next day, July 23, Hoefle and Bauer loaded the truck assigned to Bauer with the special equipment which they would need for the job. They went to O'Hare Field, picked up the parts shipment, and proceeded to Logansport. When they arrived in Logansport, at approximately 3:30 p.m., they located the disabled machine on Orr International's job site, and they there talked to Jerry Purdom, Orr's foreman. Purdom was very anxious to have the machine in operation the next morning. Hoefle and Bauer disassembled the machine and found a broken shear pin. After the pin was replaced, the machine was operating but overheating. They also discovered a piece missing inside the motor, and Bauer was afraid that this would cause the machine to continue to overheat. He felt that a new motor would be necessary.

Purdom and Hoefle then telephoned the manufacturer of the machine, and it suggested that they reassemble the machine and try to operate it. If that did not work, the manufacturer would arrange for the delivery of a new motor via Indianapolis. In that event, Hoefle and Bauer again would be required to disassemble the machine and install the new motor.

At about 6:30 p.m., Purdom and Hoefle returned to the machine, where Bauer was working, and related their

plan to him. Bauer told Purdom that they would have to get permission from their superiors at Howell to remain overnight at Logansport. Purdom and Bauer then telephoned Howell's field-service manager. Bauer explained the situation, Purdom told the manager that he wanted Hoefle and Bauer to stay in Logansport, and the manager approved.

Purdom, Hoefle and Bauer then went to the Ben Hur Motel in Logansport, where Purdom had been staying. Hoefle and Bauer, too, secured rooms at the motel. After washing up, Hoefle and Bauer ate dinner with Purdom at the motel. According to Bauer's testimony, Purdom suggested at dinner that they go out for a couple of drinks and discuss the problems of the machine. Following dinner, claimant testified, they watched TV, then showered, borrowed clothes from Purdom, changed into them and left the motel, apparently shortly after 10 p.m., in Purdom's truck. The three men went to a bar where they had two or three drinks each and talked about the machine, football, and various other topics. At about 11:30 or 11:45 p.m., Purdom took them to another bar in Logansport, where they remained, again talking about the machine and other topics, until closing time, about 1:30 or 1:45 in the morning of July 24. As the tavern was closing, Purdom and Hoefle decided to go to breakfast and suggested Bauer join them. Bauer, however, wanted to go back to the motel. Bauer went to the bathroom, and, when he returned to the table, Purdom and Hoefle were gone. The latter testified that they waited some 10 or 15 minutes in the truck for claimant, and then drove around the block and returned to the tavern, leaving when claimant was not visible.

Although he had never been in Logansport before, claimant decided to walk back to the motel. He thought that he knew where he was and that he would recognize the motel. He did not inquire about taxi service, which was available, or ask anyone for directions to the motel.

Bauer, Purdom and Hoefle had driven about 10 minutes from the motel to reach the first bar and another 10 minutes from the first bar to reach the second one. Subsequent testimony revealed that the distance from the second bar to the motel was about three miles. After walking for a few blocks, claimant realized that he was lost, and he came upon what was apparently an abandoned railroad station. He thought he remembered crossing some railroad tracks on the way from the motel, so he walked over to the station to see if someone were there. If not, he thought that he might be able to follow the tracks back to the motel. Bauer found no one in the station, and he started walking alongside the tracks in the direction he thought the motel was located. He testified that a train started to pass him, that some part of the train made contact with him, and that it dragged him along backwards. He held onto a "bar or handle or something" as long as he could with his left arm but finally had to let go. He apparently fell onto the tracks, and the train ran over his left leg. He dragged himself away from the tracks and put his belt around his leg as a tourniquet. He lay there, yelling for help, until a police officer, John Leigh Adair, arrived. Adair, with job-related experience with intoxicated individuals, later testified that in his opinion Bauer was not intoxicated. He stated that Bauer was coherent and handled himself well under the circumstances. In response to a question by the arbitrator, claimant denied that he had attempted to hitch a ride on the train.

Claimant testified that he had been out of town to repair equipment for Howell more than 25 times during his employment by that company. When he went out of town, the company either advanced money for his expenses or reimbursed him. Claimant also testified that the company never gave him instructions or placed restrictions on him concerning his conduct after he left a job site on out-of-town business trips. On a number of previous occasions when the company sent him out of

town, claimant went out with customers after work for a few drinks. On one such occasion, claimant sold a customer a piece of equipment, and the company paid claimant a bonus for the sale. Claimant's coworker, Hoefle, confirmed the lack of restrictions on after-work activities while out of town on business. Hoefle did admit, however, on cross-examination, that he and claimant were paid on an hourly basis and were not actually being paid during the time that they spent socializing in Logansport.

Since claimant was a traveling employee, it is not disputed that his injury was sustained in the course of his employment. Howell, however, urges that the injury did not arise out of claimant's employment. An injury sustained by an employee arises out of his employment if the employee at the time of the occurrence was performing acts he was instructed to perform by his employer, acts which he has a common law or statutory duty to perform while performing duties for his employer, or acts which the employee might be reasonably expected to perform incident to his assigned duties. *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510; *U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 473; *Ace Pest Control, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 386, 388.

Injuries to employees whose duties require them to travel away from home are not governed by the rules applicable to other employees. Under the standard enunciated in *Ace Pest Control*, set forth above, an injury is compensable if the conduct which gave rise to the injury is reasonable and might normally be anticipated or foreseen by the employer. (*Wright v. Industrial Com.* (1975), 62 Ill. 2d 65, 70; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510; *U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 475.) Compensation has therefore been allowed for injuries sustained by traveling employees outside the course of a normal business day and while the employee was not performing

duties owed his employer. (*Wright, Wexler.*) Both *Wright* and *Wexler* indicate that a traveling employee may be compensated for injuries sustained while he was engaged in recreational activities as long as those activities were reasonable and foreseeable.

Although the protection afforded a traveling employee by the Workmen's Compensation Act (Ill. Rev. Stat. 1977, ch. 48, par. 138.1 *et seq.*) is considerably more extensive than that afforded other employees, the purposes of the Act do not require the employer to serve as an insurer for a traveling employee. (*Ace Pest Control, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 386, 388; *Klug v. Industrial Com.* (1943), 381 Ill. 608, 611-12.) The burden of establishing compensability rests upon the claimant, and proof that he would not have been at the place where the injury occurred but for his employment is not alone sufficient. (*U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 473; *Rysdon Products Co. v. Industrial Com.* (1966), 34 Ill. 2d 326, 329; *Christian v. Chicago & Illinois Midland Ry. Co.* (1952), 412 Ill. 171, 175-76.) Thus in *U.S. Industries* compensation was denied a traveling employee because his off-duty activities from which the injury arose were not reasonable or foreseeable.

Assuming here that claimant's conduct in borrowing dressier clothes, showering and leaving the motel after 10 p.m. was reasonable and foreseeable, it ceased being so, in our judgment, when claimant decided to part with his companions and return to the motel alone. Although the claimant testified he thought he knew how to reach the motel, he had never been in Logansport before. He, Purdom and Hoefle had driven a total of 20 minutes to reach the tavern where they parted. He didn't ask anyone for directions to the motel, nor did he inquire about the taxi service which was available. Instead, about 2 a.m. in the morning and after admittedly having five drinks, he set out on foot in an unsavory section of the town to reach his motel some three miles away without being certain

which direction or how far it was. In our opinion that action is simply not reasonable, nor could an employer be expected to reasonably foresee that an employee would make such a rash decision.

The conduct before us more closely resembles the conduct of the employee in *U.S. Industries* than that in *Wright* and *Wexler*. In this case, as in *U.S. Industries, Wright* and *Wexler,* a traveling employee away from home decided to pursue social or recreational activities in his off-duty hours. In both *Wright* and *Wexler*, however, no evidence pointed to any unreasonable activities by the employees. In *Wexler* the employee was killed when a runaway truck struck the station wagon he was driving at 6:30 p.m. on Memorial Day on a street in Omaha, Nebraska. In *Wright* the employee was killed in a head-on collision on a State highway in Tennessee around midday. Although the collision was not explained, testimony established that the road was straight and dry and that the weather was clear. Nothing suggested that the activities of the employees in *Wright* and *Wexler* were hazardous or unreasonable. Accordingly, the accidents in those two cases were considered compensable. *Wright v. Industrial Com.* (1975), 62 Ill. 65, 71; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 511.

In contrast the employee in *U.S. Industries* set off on a midnight drive in the mountains of western Pennsylvania, terrain that was not familiar to him. He fell asleep at the wheel and was injured in a subsequent collision. The employee was denied compensation because the decision to embark on this midnight excursion was itself unreasonable. (*U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 475.) In the case now before us even though the initial decision to have a few drinks with Purdom and Hoefle is assumed to be unobjectionable, the decision to walk back to the motel resulted in a late-night excursion through an unfamiliar and potentially hazardous area, not unlike the trip in *U.S. Industries*. Eschewing taxi service

and guidance in locating the motel, Bauer predictably became lost and, at that hour in the morning, apparently saw no one to assist him. As the arbitrator below decided, any conclusion that this rash course of conduct is reasonable and foreseeable is against the manifest weight of the evidence.

We therefore affirm the judgment of the circuit court of Du Page County.

*Judgment affirmed.*

MR. JUSTICE KLUCZYNSKI, dissenting:

Believing that the Commission's decision is not against the manifest weight of the evidence, I respectfully dissent.

The evidence indicates that claimant was frequently required to work away from respondent's home office. On this particular trip, in fact, his overnight stay was expressly authorized. While on this trip, as always, claimant used a company truck and company equipment, and the company paid his expenses.

The evidence also indicates that no restrictions were placed upon claimant and his coworker as to their activities after leaving the out-of-town job site and that, given this discretion, they decided to have a few drinks with their customer's representative. The evidence is uncontroverted that one purpose of this socializing was to discuss the problems of the machine. Respondent admits that there is nothing unreasonable about claimant's activities thus far. It concedes that a traveling employee generally remains in the course of his employment from the time he leaves the employer's premises until he returns and even during free time when engaged in reasonable activities incident to his employment, including socializing with customers. Respondent claims, however, that it could not reasonably foresee claimant's injury. Respondent argues, "Under the circumstances of the employment obligation in this case, it is unreasonable that an employee who was required to be at the job promptly the next

morning would: (1) refuse a ride back to the motel at approximately 1:10 [a.m.] when his companions left; (2) *** even consider walking a number of miles at 2:30 [a.m.] when in a city with which he was not familiar; (3) *** fail to explain his activity during a period of approximately one hour after leaving his companions in an establishment which was only a few blocks from the place of [the] accident; (4) *** be hanging from a railroad car by one or both hands without any explanation as to how or why he had assumed that position." Respondent also points out, correctly so, that in deciding the "course of employment" issue, we must focus on the injury and not on whether claimant's trip generally could be said to be in the course of his employment. See 1 A. Larson, Workmen's Compensation sec. 14, at 4–1(1978).

Were I to agree with respondent's interpretation of the evidence, I might be more inclined to accept its argument that the injury did not arise out of and in the course of claimant's employment. The fact is, however, that (1) there is no evidence that claimant refused a ride back to the motel or that his companions definitely left at 1:10 a.m.; the testimony was that claimant declined his companions' invitation to breakfast, and the estimates given as to the time that they left ranged from "shortly after" 1 a.m. to 1:30 or 1:45 a.m.; (2) there is nothing manifestly unreasonable about undertaking a walk of three miles, and the majority's assertion that claimant shunned taxi service is without support in the record, as there is no evidence that a taxi was available at the time of the occurrence; (3) claimant admitted being lost, thereby explaining the lapse of time between leaving the bar and being hit by the train; and (4) the record does not indicate that claimant voluntarily "assumed" a hanging position on the side of the train.

Nor do I believe that the cases cited by respondent require a result different from that reached by the Commission. In *U.S. Industries v. Industrial Com.* (1968),

40 Ill. 2d 469, 475, for example, the court's decision to deny compensation was based on the absence of a "reasonable relationship" to the claimant's employment; the court said, "Claimant's action in undertaking a midnight pleasure drive in unfamiliar, mountainous terrain was, in our judgment, a clearly unanticipated, unforeseeable and unreasonable activity not normally to be expected of a traveling employee." Clearly, no interest of the employer would be furthered by taking a drive in the mountains. Here, however, the employer's interest played a key part in claimant's trip and in his social activity, and I find no manifest error in the Commission's determination that claimant's walk alongside the railroad tracks and the resultant injury were incidental to his employment.

I believe that the present case is more closely analogous to those decisions cited by claimant in which compensation was awarded. In *Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, for example, the court affirmed an award of compensation to the widow and five children of a traveling salesman who was killed on Memorial Day, 1967, while in Nebraska on business. There was a dispute in the evidence as to whether the deceased was engaged in business or recreational activity immediately preceding his death, but the court held that this did not bar an award. The court said:

> "But even if it were to be assumed that the decedent was returning from an activity such as golfing, and not from his appointment, we judge that under the circumstances that conduct would not have been unreasonable. It was Memorial Day, a legal holiday in Nebraska, as in this State. The decedent was away from home in the course of an extended sales trip in behalf of his employer. It would be obviously unreasonable and contrary to the intendment of the Workmen's Compensation Act and its purposes to say that a traveling employee has the protection of the Act only when

in the physical act of performing selling or other duties and only in the course of a normal business day." (52 Ill. 2d 506, 511.)

(See also *Hansen v. Industrial Com.* (1951), 258 Wis. 623, 46 N.W.2d 754 (compensation awarded for death of an Arizona-based salesman found dead in Mexico near a restaurant-night club at 1:30 a.m. following an evening of socializing); *Cavalcante v. Lockheed Electronics Co.* (1964), 85 N.J. Super. 320, 204 A.2d 621 (compensation awarded for death of a traveling employee while returning to his motel from a dance hall two miles away); *In re Claim of Kohl* (1959), 9 App. Div. 2d 597, 189 N.Y.S.2d 361 (compensation awarded for death of a traveling employee driving to a restaurant 10 miles from a motel).) As Professor Larson states in his treatise, the pursuit of pleasure incident to employment does not bar an award. 1 A. Larson, Workmen's Compensation sec. 18.42, at 4—287 (1978), citing *Bradford Supply Co. v. Industrial Com.* (1971), 50 Ill. 2d 190.

In *Bradford Supply,* a strikingly similar case which I believe is indistinguishable in any material respect, the court affirmed an award for the loss of a leg of a traveling employee. The employee had performed the required service, had consumed several beers with the customer, and was returning to his employer's hometown at a late hour when he suffered his injury. In affirming an award, the court held that it was reasonable to expect the employee to remain and socialize with the customer after completing his task and that his injury clearly arose out of and was sustained in the course of his employment. (50 Ill. 2d 190, 195.) Similarly, I believe that claimant's injury sustained here is compensable.

In summary, and as the majority itself acknowledges, a traveling employee is generally considered differently from other employees in determining whether an injury arose out of and in the course of his employment (*Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510),

the implication being that a traveling employee is allowed more leeway in the activities he may pursue without losing the protection of the Act. The key inquiry is, as we have said, "the reasonableness of the specific conduct and whether it might normally be anticipated or foreseen by the employer ***." (*U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 475.) The Commission's determination on this key element, however, is not to be disturbed unless contrary to the manifest weight of the evidence (*Brewster Motor Co. v. Industrial Com.* (1967), 36 Ill. 2d 443, 449); the evidence here is not so clear or uncontroverted that the issue becomes one of law, subject to resolution by this court *de novo* (*Math Igler's Casino, Inc. v. Industrial Com.* (1946), 394 Ill. 330, 334). The Commission here rendered a decision favorable to claimant. I do not believe that a finding that the Commission's decision is against the manifest weight of the evidence is possible unless we are to weigh the evidence or inject our own notions of credibility; yet these are not the functions of this or any reviewing court.

GOLDENHERSH, C.J., and CLARK, J., join in this dissent.