[Civ. No. 11887.   Third Dist.   Dec. 11, 1968.]

CAL-NAT AIRWAYS, INC., Petitioner, v. WORKMEN'S COMPENSATION APPEALS BOARD, ARGONAUT INSURANCE COMPANY et al., Respondents.

Cooper, Tepper & Plant and Leon M. Cooper for Petitioner.

Everett A. Corten, Marcel L. Gunther, Henry P. Starr, Brian Bishop, McLaughlin, Evans, Dalbey & Cumming and Barry F. Evans for Respondents.

FRIEDMAN, J.—Cal-Nat Airways, a Grass Valley firm, supplies pilots and borate tanker planes for forest fire fighting. This review turns on the question whether the workmen's compensation insurance policy issued to Cal-Nat Airways by Argonaut Insurance Company covered Lewis Leach, a Cal-Nat pilot, at the time he crashed and was killed. The referee found coverage, but the Workmen's Compensation Appeals Board reversed his decision and ordered payment of death benefits by the employer.

To reduce the cost of insuring such pilots, Allen T. Archer Company, a Los Angeles insurance broker, evolved a compensation insurance program to which Argonaut agreed. Mr. C. F. Grier, vice president of the Archer firm, was the active figure in effecting the arrangement. Essence of the arrangement was a form of reinsurance called "back-up" insurance.

An agent for Lloyds of London issued back-up insurance in the form of a master accident policy payable to Argonaut. When the employer furnished a pilot's name to the Archer Company, the latter would in turn notify Lloyds' agent. As soon as the agent received the pilot's name, the accident policy would cover him, and the pilot would simultaneously be covered by the employer's compensation policy issued by Argonaut. Coverage would occur immediately even though Lloyds' agent and Argonaut would later issue their respective endorsements designating the pilot by name. Cal-Nat purchased coverage pursuant to the revised plan effective in May 1964.

The courts will not disturb WCAB findings of fact which are supported by substantial evidence, even when the board on reconsideration reaches findings contrary to those of the referee. (*Buescher* v. *Workmen's Comp. App. Bd.*, 265 Cal.App.2d 520, 529 [71 Cal.Rptr. 405]; *Montyk* v. *Workmen's Comp. App. Bd.*, 245 Cal.App.2d 334, 335 [53 Cal. Rptr. 848].) Nevertheless, when a seeming finding embraces a conclusion that the facts do or don't create a legal relationship, the question is one of law. (*Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287].) In its decision on reconsideration, WCAB essayed three characterizations of law: (a) that Argonaut was not estopped to claim coverage, (b) that the Archer Company was not its agent for the purpose of receiving notification, (c) that Argonaut's policy did not cover Leach. (Cf. *Tate* v. *Industrial Acc. Com.*, 120 Cal.App.2d 657 [261 P.2d 759]; *Industrial Indem. Co.* v. *Industrial Acc. Com.*, 115 Cal.App. 2d 684, 690 [252 P.2d 649].) Correct or not, these conclusions were secondary to a primary issue of fact: whether before Leach's fatal crash Cal-Nat had communicated notification of his employment to the Archer Company. At this point the events were in controversy.

Mrs. Stevenson, vice president of Cal-Nat, testified that in early May 1964 Grier had been at her office in Grass Valley. At that time she or Mrs. Miller gave him the names of three Cal-Nat pilots, Ponte, McCoy and Radcliffe. About May 26, 1964, she telephoned the Archer Company in Los Angeles, asked for Grier, who was not in, and after several minutes was connected with an unidentified woman employee, to whom she gave Leach's name as a newly employed pilot for whom she wished compensation insurance coverage. Mrs. Steven-

son's description of the telephone call was supported by Mrs. Miller, then a bookkeeper for Cal-Nat but no longer employed by the firm. Both Mrs. Stevenson and Mrs. Miller testified that the former was asked to spell Leach's first name over the telephone and did so. Mrs. Miller particularly remembered the telephone call, because there was a long delay before Mrs. Stevenson could get an appropriate person at the other end of the line, and because the conversation included the spelling of Leach's name. She corroborated Mrs. Stevenson's testimony as to the other three pilots.

Grier testified that in May 1964 he had no oral notification of any pilots' names. He had no knowledge of Leach's employment until Mrs. Stevenson phoned his firm on June 25, 1964, immediately after the fatal accident. When he received word of Leach's death, he sent a written message to Lloyd's agent seeking coverage for Leach. (The request was refused.) Grier made inquiries of the persons in his office. These persons all denied any conversation with Mrs. Stevenson regarding Leach's employment.[1] At the time any telephone calls to his office regarding "aviation" coverage would have been taken by a Mrs. Kagy, although another secretary, Mrs. Terris, handled his other phone calls in his absence. Grier testified to a telephone conversation with Mrs. Stevenson on May 27, 1964, in which she mentioned Gaylord B. Radcliffe, another pilot. In a telephone conversation with Mrs. Stevenson after Leach's death, Mrs. Stevenson told him not only of Leach but of two more pilots (McCoy and Ponte) of whose employment he had been unaware.

Mrs. Kagy of the Archer office testified that she had no conversation with Mrs. Stevenson such as the latter described. Another female employee, Mrs. Harris, also received calls in Grier's absence.[2] Mrs. Harris was no longer employed by the Archer Company. She was not called to testify and the record shows no effort to find her.

At the time of the hearing, the telephone company no

---

[1]At this point the transcript of testimony reveals the following question of Mr. Grier and his reply: "Q. Have you made inquiry whether such a message was left for you? A. Yes. At the time of the death of Mr. Leach, subsequent to that time of death, when Mrs. Stevenson sent me a letter indicating that she talked to someone in the office, I took it around to everyone in the office to see if any person had discussed this adding of Lewis Leach to the policy and nobody had had any conversations with her according to their testimony to me."

[2]From the transcript it is not clear whether the Mrs. Terris mentioned by Grier and the Mrs. Harris mentioned by Mrs. Kagy, were the same or different persons.

longer had records showing whether the Grass Valley-Los Angeles phone call described by Mrs. Stevenson had taken place.

In his decision the referee had resolved the evidentiary dispute in favor of Cal-Nat. In his view the positive, corroborated testimony of Mrs. Stevenson had greater probative value than the testimony that no Archer employee recalled such a telephone call. WCAB disagreed. In its opinion on reconsideration, it stated: "The witness Grier of Archer Company testified that the employer did not report any pilots but one Radcliffe until June 25, 1964 when employer called to report Leach's death. We accepted [sic] this testimony."[3]

The quoted statement is the only declaration of the WCAB conceivably amounting to a finding of fact on the score of notification. For several reasons it is legally inadequate.

First: Labor Code section 5908.5 requires any WCAB decision on reconsideration which alters an original finding to "state the evidence relied upon and specify in detail the reasons for the decision." This procedural demand aims at revealing the basis of the board's action, at avoidance of careless or arbitrary action and at assisting in meaningful judicial review. (*Lundberg* v. *Workmen's Comp. App. Bd.*, 69 Cal.2d 436, 440 [71 Cal.Rptr. 684, 445 P.2d 300].) The board reversed the referee's finding of notification with nothing more than the flat statement that it "accepted" Grier's testimony. Such a declaration is comparable to one that the board relied upon certain evidence, a declaration held inadequate in *Granado* v. *Workmen's Comp. App. Bd.*, 69 Cal.2d 399, 407 [71 Cal.Rptr. 678, 445 P.2d 294]. Whatever its actual inquiry, the board's statement was summary and arbitrary on its face, unaccompanied by any statement of reasons and failing to meet the requirements of section 5908.5.[4]

[3] In the board's decision the "ed" in "accepted" is faintly lined out.
[4] The transcripts of oral testimony filed with this court bear reporters' certifications dated in June and July 1968, providing an inference that at the time of its decision on reconsideration (November 16, 1967) the board did not have the transcripts before it. Before rejecting the finding of the referee, the board members had to achieve an independent understanding of the record, not necessarily by hearing or reading it in its entirety, but by any reasonable means, including the referee's summary. (*Allied Comp. Ins. Co.* v. *Industrial Acc. Com.*, 57 Cal.2d 115, 119-120 [17 Cal.Rptr. 817, 367 P.2d 409].) Here the referee had prepared a summary of the evidence preceding his decision and a report to the board in connection with Argonaut's petition for reconsideration. In both statements the referee provided detailed reasons for his belief in the testimony of Mrs. Stevenson and of Mrs. Miller, Cal-Nat's former employee. Where

Second: The WCAB misstated Grier's testimony, then declared its acceptance of the testimony as misstated. Credibility, of course, is a matter for the fact-finder, not the reviewing court. (*Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 197.) Grier, however, had not testified that Cal-Nat reported no pilots but Radcliffe. Rather, he testified that "everyone in the office" had responded to his inquiry by denying a conversation with Mrs. Stevenson. Mrs. Kagy was the only other witness from the Archer staff. There was no apparent effort to produce Mrs. Harris (or Terris) as a witness, nor any specific evidence that Grier's inquiry had included her. A careful fact-finder might be willing to grant probative value to Grier's all-inclusive, hearsay statement but —recognizing its limitations—would be impelled to scan the record for other evidence.[5] The board's erroneous description of Grier's testimony evinces a failure to recognize its limitations. A decision based upon such a misapprehension is unreasonable and cannot stand. (Lab. Code, § 5952, subd. (c).)

In its decision WCAB expressed the view that the Archer Company had not been Argonaut's agent; hence, that notification to Archer of the pilot's name would not immediately bind Argonaut. In its further consideration of this matter, the board should reexamine the record in the light of the principles of insurance law enunciated in *Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d 191, and *Eagle Indem. Co.* v. *Industrial Acc. Com.*, 92 Cal.App.2d 222 [206 P.2d 877].

The decision of the Workmen's Compensation Appeals Board is annulled and the cause remanded for further proceedings consistent with this opinion.

Pierce, P. J., and Regan, J., concurred.

The petition of respondent Argonaut Insurance Company for a hearing by the Supreme Court was denied February 5, 1969.

---

·the board does not hear or read the oral testimony, yet reaches a factual decision contrary to the referee's summary supplied as a foundation for ·its action, the policy reasons underlying Labor Code section 5908.5 become especially emphatic.

[5]This reviewing court eschews any attempt to weigh Grier's testimony. For the purpose of further proceedings, however, it is appropriate to note that its hearsay character does not necessarily stamp it with insubstantiality. (*Sada* v. *Industrial Acc. Com.*, 11 Cal.2d 263, 268 [78 P.2d 1127].)