[Civ. No. 38170. Second Dist., Div. Five. Dec. 9, 1971.]

EDWARD F. ROSS, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
HARRY CHURCH et al., Respondents.

## Counsel

Korchak & Echt and Sydney Halem for Petitioner.

Rupert A. Pedrin, Gabriel L. Sipos, Lionel K. Hvolboll, Herlihy, Herlihy, Jones & Nelson, Jack Sisk and David P. Ford for Respondents.

## Opinion

**AISO, J.**—Writ of review. Petitioner Edward F. Ross (claimant) sustained injuries while working as a clerk for Harry Church, dba Seville Liquor Store (employer) on September 5, 1969, in Little Rock, California, when Robert Lester Davison, a customer, shot him with a handgun. Claimant seeks annulment of the order granting reconsideration and decision on reconsideration of the Workmen's Compensation Appeals Board (Board) rescinding the referee's findings, award, and order granting him compensation. The review turns on whether the injuries sustained by claimant were "proximately caused" by his employment.

### Evidentiary Facts

We set forth only those facts and evidence relevant to the issue on review. Claimant was a 35-year-old bachelor who had lived in Little Rock at the same address for 21 years with his mother. He had worked for the Seville Liquor Store for about seven years. He became acquainted with Davison and his wife, Willie Mae Davison, in the course of his employment following their introduction to him by Booker T. Ferguson, Davison's father-in-law, at the store about two years prior to the shooting episode.

The Davisons had been married for approximately 16 years, they had children, and they were living together, about 2 or 2½ miles distant from the store. Mrs. Davison operated the Sun Village Rest Home in Little Rock. She had a charge account at the store. Davison came to the store seven or eight times each month. Mrs. Davison came almost every other day, sometimes daily, to pick up sundry items, e.g., bread, soft drinks, potato chips, etc. She also brought her patients to the store to procure supplies. Claimant was not the only clerk who waited upon Mrs. Davison when she came to the store.

On September 5, 1969, Davison first came into the store around 4:30 p.m. Another clerk, Ernie Davis, and a customer, Wesley Clark, were also present. Davison purchased three bottles of soda—drank one at the store and took the other two with him. He talked with claimant at this time, but the conversation consisted only of general talk related to the store and the day. Claimant had engaged in similar conversations with Davison on previous occasions, either in the store or just outside of it.

Davison returned to the store about four hours later (8:30 or 9 p.m.) and shot claimant, who "was putting up some stock off the counter." Claimant states that he did not see Davison before he was actually shot and that he does not know why he was shot. No words were exchanged between the two at the time, and claimant denies hearing Davison say anything. In this regard, employer testified that while he was in his walk-in box stocking up beer, he heard *someone* say to claimant, "Man, you have had it," and then heard three shots fired. He later grabbed Davison's arm, which held the gun, and told Davison "to cool it." Davison replied, "I have got no beef with you, Harry," and left the premises as directed by employer.

Mrs. Davison testified: Before the shooting, her husband assaulted her in their bedroom, choking her and causing her to lose consciousness. After she "came to" and was in their bathroom, her husband said, "I should kill you. Do you know why?" When she said, "No," he told her that he had heard that she was "having an affair" with claimant and "going with him." He put a rifle to her head and pulled the trigger, but it failed to fire. She grabbed the barrel of the gun, and as they wrestled for the weapon, Davison beat her with his fists and threatened to kill her and claimant. Their children heard the commotion, and the daughter obtained a butcher knife and tried to stab Davison. At that juncture, Mrs. Davison got up from the floor and ran out the back door.

She ran to a neighbor's house, where she telephoned the liquor store. Employer answered the call. She told him that Davison was on the way over either to shoot or to kill claimant. She told employer that "it was all because of a lot of lies, a mistake." Employer informed her that it was too late, that Davison "had already been in and did it."

Objection was sustained to a question inquiring whether Davison had also assaulted a third person.

Such conflicts as occur in the evidence center around that portion relating to the cause of Davison's jealousy. Claimant said that he was not aware of anything indicating that Davison was jealous of his wife and of him. On cross-examination, he stated that he had a girl friend at the time of the

shooting, inferring that she was a person other than those implicated in the shooting. He testified: He did not know Mrs. Davison "socially outside the store other than as a customer." He sat possibly twice in Mrs. Davison's car when it was in the parking area in front of the store. On these occasions, he was out in front of the store and she had said, "Sit down for a minute." He stayed only two or three minutes as it was during working hours. He did not recall what they talked about. He could not state precisely when he last sat in Mrs. Davison's car, since she was a frequent customer. He talked to her a number of times while he stood outside of the car. His employer never told him that he was spending too much time talking to Mrs. Davison. He was unaware that Davison had beaten his wife before coming to the store to shoot him. He had received a number of phone calls of a business nature from Mrs. Davison over the two years prior to the shooting. He answered the phone, which is a public telephone, when he was on the job. He had last talked to Mrs. Davison about a week prior to the shooting when she wanted to order some bacon through the store. The store usually made up a box for her, which she would pick up and charge to her account.

Mrs. Davison testified: She never had "any affair" with claimant. She talked to him whenever she was in the store. Claimant did sit in her car, a 1969 Oldsmobile station wagon, upon one occasion when her brother and two other women were also in it. She never sat alone with claimant.

Employer testified: Prior to the shooting, upon occasions too numerous to count, he had observed claimant and Mrs. Davison sitting in her car, parked at the side of the liquor store or in the parking lot in front of it. He had warned claimant of the "danger" from Mr. Davison and had told claimant that he "was not taking care of his job like he should." He had given claimant "a little fatherly advice" that "[a] man just don't do that and live forever . . . that some day somebody was going to catch up with him." Claimant appeared to employer "to think it wouldn't never make any difference." When asked for the basis of this conclusion, employer gave this ambiguous explanation: "Only the fact that he was kind of the middleman for Mrs. Davison with a girl friend and that he didn't much figure that he could say anything to him because he was doing the same thing." Neither the referee nor the parties made any attempt to elicit a clarification of this statement. On cross-examination, employer was asked whether he had replied, "Not to my knowledge, no," to this question asked at Davison's preliminary hearing on a charge of having committed a felonious assault on claimant: "Of your personal knowledge has there been a conflict or argument or anything of that nature between Mr. Ross [claimant] and the defendant Mr. Davison prior to this incident?" Employer answered, "That's right."

## Rationale of Administrative Action

The trial referee found that "the motivation for the shooting was personal," but applying what he understood to be the teachings of *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 157 [65 Cal.Rptr. 155, 436 P.2d 67], he drew the legal conclusion that the shooting arose out of the employment despite this personal motivation. The Board disagreed holding that claimant's employment did not fall within the perimeter of the "positional risk" doctrine. In its opinion, the Board stated in part as follows: "While it is true that the injury occurred on the employer's premises during business hours, the injury arose, not out of the employment, but out of a personal animosity harbored by Davison. The employment provided a place where Davison, the assailant, could find . . . his victim, but, other than that, the place of employment in no way contributed to the assault. Davison's animosity was entirely unrelated to the employer's business, and applicant was injured *while* he was working but *not because* he was working."

## Discussion

In more or less isolating the portion of employer's testimony adverse to claimant and resting its decision thereon detached from the balance of the evidence, the Board's decision does not comport with *Garza* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 312, 317 [90 Cal.Rptr. 355, 475 P.2d 451] that "any award, order or decision of the board must be supported by substantial evidence in the light of the entire record. . . ." While the Board accepts the fact that both claimant and Mrs. Davison (the only ones having actual knowledge) denied any impropriety in their relationship, it ignores the following circumstantial evidence bearing on that issue: (1) Upon cross-examination, claimant stated that he had a girl friend (of his own during the time herein relevant). (2) Mrs. Davison, when under great stress and excitement, telephoned the store to warn that her husband was on the way to kill or shoot claimant and further said, "it was all because of a lot of lies, a mistake." (3) Employer testified at the preliminary hearing, wherein Davison was charged with a felonious assault on claimant, that to his knowledge there was no conflict or argument between Davison and claimant prior to the shooting incident.[1] The reporter's transcript does not bear out the statement that employer admonished claimant on the day preceding the shooting. There is no evidence of the context of the conversations between claimant and Mrs. Davison, nor is there evidence of the source of Davison's information that his wife was going with claimant

---

[1] As to competency of this evidence, see: Evidence Code section 1235; *California* v. *Green* (1970) 399 U.S. 149 [26 L.Ed.2d 489, 90 S.Ct. 1930].

and having an affair with him. Even when viewed in the light most damaging to claimant, the totality of the proof proves no more than claimant's having sat in Mrs. Davison's car during business hours, in clear view upon the employer's premises which were open to the public, and having conversed with her for periods of two or three minutes. The conclusionary portion of the employer's testimony possibly inferring moral culpability was not based upon actual knowledge of the true character of the relationship between claimant and Mrs. Davison. ■ Claimant has the burden of proving a causal relationship between his employment and his injury, but he who claims a wrongdoing has the burden of proving that issue (Evid. Code, § 520), and all reasonable doubts as to whether an injury arose out of employment are to be resolved in employee's favor. (*Garza* v. *Workmen's Comp. App. Bd., supra.*)

■ We need not linger over this issue, for the gravamen of the question on review is whether upon the Board's evaluation of the evidence, it reached a proper conclusion, thus presenting a question of law. (*Granco Steel, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 68 Cal.2d 191, 197 [65 Cal.Rptr. 287, 436 P.2d 287]; *Cal-Nat Airways, Inc.* v. *Workmen's Comp. App. Bd.* (1968) 268 Cal.App.2d 93, 95 [73 Cal.Rptr. 815]; cf. *Reinert* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 349, 358 [294 P.2d 713].)

Labor Code section 3600 requires that the activity of the employee at the time of the accident be job-related and that the injury be proximately caused by the employment. (*Industrial Indem. Co.* v. *Ind. Acc. Com.* (1950) 95 Cal.App.2d 804, 806 [214 P.2d 41].) ■ Further elaborations of this rule may be extrapolated from *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd., supra,* 68 Cal.2d 157, namely: (1) The proximate causation requirement is fulfilled if the employment be a contributory cause of the injury; it need not be the sole cause. (2) "[W]here the injury occurs on the employer's premises while the employee is in the course of his employment the injury also arises out of the employment unless the connection is so remote from the employment that it is not an incident thereof, . . ." (68 Cal.2d at p. 160.) ■ (3) That the motivation for an attack upon an employee by a third party is a personal grievance unconnected with an employee's duties does not per se render the injury noncompensable. ■ (4) "[T]o effectuate the purposes of the compensation statute, all reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employee." (68 Cal.2d at p. 161.)

The court in *Truck Ins. Exchange* v. *Ind. Acc. Com.* (1946) 27 Cal. 2d 813, 816 [167 P.2d 705], stated, "In considering whether an injury arose 'out of' and was 'proximately caused by the employment' it has been

repeatedly recognized and emphasized that questions of workmen's compensation are not controlled by common law rules as to 'proximate cause' in tort cases. . . ."[2]

In *Industrial Indem. Co.* v. *Ind. Acc. Com.*, *supra*, 95 Cal.App.2d 804, a female employee served a male customer a bottle of beer. Later the customer's wife came in and fired a revolver at her husband. The bullet missed the husband, but it ricocheted off the bar and struck and killed the employee. In affirming an award in favor of the employee's surviving minor child, the court adopted the rationale of a West Virginia case that " ' . . . if there is an incidental or causal connection between the employment and the accident, the injury is deemed to have arisen out of the former, even when the connection is somewhat remote, and when the direct and immediate agency of the injury is foreign.' "

The causal connection between job and injury is stronger in the case at bench. Even if the motivation for the shooting be characterized as personal, the causative factor of that motivation is to be found, at least in part, in claimant's work activity and ambient circumstances of his employment. It may be inferred that, at least at times, he was taking the box of groceries ordered over the phone to Mrs. Davison's car. If at such time, she said, "sit down for a minute," a clerk, if no other customer needed to be waited upon immediately, would probably do so, if only to humor and engender the goodwill of a customer. It may be that under some circumstances, such as where a husband or a wife is suspicious of the other's faithfulness, this course of conduct could be given a sinister interpretation. Nevertheless, it cannot be said that there is not at least a contributing causative connection between the employment and the injury. (Cf. *Brewster Motor Company* v. *Industrial Commission* (1967) 36 Ill.2d 443, 449-450 [223 N.E.2d 131, 134-135].)

In hindsight, it may be that claimant did not exercise the best of judgment, was negligent, or was at fault for engaging in a course of conduct that might arouse the ire of a jealous husband, but these factors do not bar workmen's compensation unless the employee's conduct is so remote to his occupational duties that there is no interrelation whatsoever between his employment and his injury.

Article XX, section 21, of our state Constitution provides in part which

---

[2]See also: 2 Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1970) § 8.03 [4], pp. 8-18; Larson, *Range of Compensable Consequences in Workmen's Compensation* (1970) 21 Hastings L.J. 609, 610, 614; Riesenfeld, *Contemporary Trends in Compensation for Industrial Accidents Here and Abroad* (1954) 42 Cal.L.Rev. 531, 547-548.

is relevant here: "The Legislature is hereby expressly vested with plenary power, unlimited by any provision of this Constitution, to create, and enforce a complete system of workmen's compensation. . . . A complete system of workmen's compensation includes adequate provisions for the comfort, health and safety and general welfare of any and all workmen . . . to the extent of relieving from the consequences of any injury . . . incurred or sustained by workmen in the course of their employment, *irrespective of the fault of any party*. . . ." (Italics added.) Fault in the sense used here is not limited to unintentional fault, e.g., contributory negligence, but extends to some intentional acts of malfeasance as well. (*State Comp. Ins. Fund.* v. *Ind. Acc. Com.* (1952) 38 Cal.2d 659 [242 P.2d 311].) In fact, the Legislature has seen fit to punish the workman or his privies only to the extent of cutting one-half of his recovery even "Where the injury is caused by the serious and willful misconduct of the injured employee." (Lab. Code, § 4551.)

In *Wiseman* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 570 [297 P.2d 649], compensation benefits were awarded under the following circumstances: A vice-president of a San Francisco bank died of asphyxiation and burns in a New York City hotel room while in that city on the bank's business and at the bank's expense. "A woman, not his wife but registered as such, was found unconscious in his room and died shortly thereafter. There was evidence that they had been drinking. . . . It was the opinion of the assistant fire marshal that the fire was caused by careless smoking by either one or both of the occupants. . . . The referee made an award in favor of [the banker's wife and minor daughter], but . . . the commission granted the employer's petition for reconsideration, vacated the referee's award and findings, and denied [the] claim." (46 Cal.2d at p. 572.) The employer contended that the death was not an incident of the employment, because "the employee was occupying the hotel room for an immoral and unlawful purpose (N.Y. Pen. Code, §§ 100-102) and [because claimants] failed to prove that the fire was owing to the negligence of the employee rather than his companion." (46 Cal.2d at pp. 572-573.) In annulling the decision of the commission, the court speaking through Justice (later Chief Justice) Traynor stated: "The fact that the employee had a guest in his room while he was off duty in no way detracted from the fact that he was also there on his employer's business, and since the employee's fault is irrelevant if the requirements of the law are met, it is immaterial that the employee's personal purpose in having a guest in his room was immoral and unlawful. [Citations.]" (46 Cal.2d at p. 573.) The court also cited *Madin* v. *Industrial Acc. Com.* (1956) 46 Cal.2d 90 [292 P.2d 892], and found the causal connection between employment and injury to be adequate.

In *State Emp. etc. System* v. *Ind. Acc. Com.* (1950) 97 Cal.App.2d 380, 381, 383 [217 P.2d 992], the court sustained an award despite the fact that an asphyxiated deceased game warden was found in the interior of a state car converted into a bed, together with a dead woman—clad "only in shorts and panties and . . . partially covered by a blanket," stating: "Nor may an award be rejected solely on the basis of moral or ethical considerations."

In the instant case, no morally reprehensible conduct such as that depicted in the two foregoing cases can be found in the proof. Even if we accept the employer's testimony as to facts actually observed, only a minimal deviation from occupational duty is shown. Employer never ordered claimant outrightly to cease his course of conduct, nor did he threaten to discharge claimant from his employ. In a sense, employer did have control over some of the forces which culminated in claimant's injury. The essential fact also remains that were it not for claimant being a clerk of the store which Mrs. Davison frequented as a customer, the appearances which gave rise to Mr. Davison's jealous state of mind would not have materialized. The occupation, therefore, did contribute to claimant's injury.[3]

The observations of the court in *State Comp. Ins. Fund* v. *Ind. Acc. Com.*, *supra*, 38 Cal.2d 659, are also enlightening at this point. The court pointed out that workmen are not mere automatons devoid of human emotions. They bring to their jobs their faults and derelictions as well as their virtues and obediences. They come with varying degrees of intelligence, skill, habits of care, and standards of rectitude. In sum, the interaction of human nature to the work environment and ambience is a risk attendant to the occupation. These observations apply with equal force to the situation presented by the case at bench.

### Disposition

The decision of the Workmen's Compensation Appeals Board upon reconsideration is annulled with directions to the Board to take further proceedings consistent with the foregoing opinion.

Reppy, J., concurred.

**STEPHENS, Acting P. J.**—I concur in the result.

It is my opinion, however, that the frequency of the visits to the store by Mrs. Davison were engendered partially at least by her interest

---

[3]We have noted *Paredes* v. *Workmen's Comp. App. Bd.* (1968) 33 Cal.Comp.Cas. 205 and *Howard* v. *Workmen's Comp. App. Bd.* (1966) 31 Cal.Comp.Cas. 358, but find them distinguishable either on the facts or the law applicable.

in claimant, though her purchases may likewise have been a reason therefor. Where the benefits resultant to an employer are attributable to the salesman, in part at least, certainly the causation of injury, as in the instant case, cannot be said to be without employment connection.[1] It appears to me that throughout the cases involving injury or death to an employee cited in the main opinion and the holdings that workmen's compensation benefits are applicable, there is the continuing thread of employer's benefit involved in the employee's activities. Where there is a romantic attachment to, or even mere personal interest in, an employee to such an extent as to reasonably redound to the benefit of an employer, an injury occasioned because of that interest and while the employee is in the course of employment is reasonably attributable to that employment.

The petition of respondents Church and United States Fidelity and Guaranty Company for a hearing by the Supreme Court was denied February 3, 1972.

---

[1]A different result would be occasioned had the motivation for the shooting been an association between Mrs. Davison and claimant outside of and totally unrelated to the employer's business, even though the injury occurred on employer's premises. This distinction is not at variance with *California Comp. & Fire Co.* v. *Workmen's Comp. App. Bd.*, 68 Cal.2d 157 [65 Cal.Rptr. 155, 436 P.2d 67], for in that case it was for the benefit of the employer that the decedent was placed in an increased position of danger.