(No. 44191.—)

BRADFORD SUPPLY COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(ROBERT C. HELM, Appellee.)

*Opinion filed November 24, 1971.—Rehearing denied Jan. 27, 1972.*

COX, PHILLIPS & WEBER, of Robinson, (MARK R. WEBER, of counsel,) for appellant.

FRANK J. WIEDNER, of Chicago, (WILLIAM J. HARTE and ANTHONY J. BOSCO, of counsel,) for appellees.

MR. JUSTICE WARD delivered the opinion of the court:

An arbitrator of the Industrial Commission of Illinois found that Robert C. Helm had suffered the permanent and complete loss of his left leg and left arm in the course of his employment by the Bradford Supply Company. The claimant, Helm, was given an award for complete disability, which, under a provision of the Workmen's Compensation Act, qualified him for a pension for life in an annual sum of $2,850. (Ill.Rev.Stat. 1967, ch. 48, par. 138—8(f).) The arbitrator's finding was confirmed by the Industrial Commission and the circuit court of Douglas County affirmed the decision of the Commission. The employer, Bradford Supply Co., has appealed and contends there was error in the finding that the claimant's injuries had arisen out of and been sustained in the course of his employment. The employer also maintains that the evidence had not satisfactorily established that the claimant had incurred permanent and complete loss of both his leg and his arm, so as to entitle him to the pension.

On May 31, 1967, the claimant, a petroleum engineer, had been employed by the Bradford Supply Company for 13 months as a sales engineer. Bradford is a supplier of oil field and irrigation equipment. On that date he was assigned to deliver a bid in behalf of Bradford to a customer in Anna-Jonesboro and to pick up an irrigation panel at Lawrenceville and deliver it in Johnston City, where George Jansco was laying out a golf course. Using a company car he left Bradford's office in Robinson about 8:30 A.M. and picked up the panel in Lawrenceville at about 9:00 o'clock. He then drove to Anna-Jonesboro, which is about 150 miles from Lawrenceville, arriving there about 1:30 or 1:45 in the afternoon. He presented the bid and discussed the planned project with the customer. Leaving Anna-Jonesboro about 4:30 P.M. he arrived in Johnston City about 45 minutes to an hour later. He entered a tavern owned by George Jansco, where he was to meet James Shrode, a manufacturer's agent, who had been employed by Jansco to lay out the golf course.

Shrode and an associate named Clark arrived about 6:00.

Schrode sells supplies to Bradford and then assists Bradford in its sale of these supplies to customers, such as Jansco. The claimant remained at the bar for about an hour and a half with Shrode and Clark discussing the course project generally and the installation of the irrigation panel and required pumps. During this period there was testimony that the claimant had two or three "beers." The men then left the tavern and went to a building where Shrode showed the claimant sprinklers, pipe connections and other equipment planned for use in the golf course. They went to the apartment of Shrode and Clark, where Shrode and Clark changed clothes and the three left at Shrode's request to see Jansco and discuss the panel and other matters connected with the golf course project. Shrode testified that he wanted Jansco to have the benefit of consulting with a professional engineer. They visited Jansco at a tavern, also owned by him and known as the J and J Ranch. The testimony was that there they rediscussed for Jansco's benefit the topics they considered earlier. The claimant drank more beer there, he and Shrode testified, though Clark said he was uncertain what the claimant was served. In all, it would appear he had five or six "beers" in a four or five hour period. After remaining there two or three hours and after sandwiches, according to Shrode's testimony, he, the claimant and Clark left the Ranch and drove back to the building where the golf course materials were stored. They unloaded the control panel and it was 11:00 or 11:30 P.M. when the claimant prepared to return to Robinson, which was about 180 miles from Johnston City. Shrode testified that on the way to and from the Ranch there had been nothing unusual about the claimant's driving and that there was no appearance of intoxication.

Between 4:00 and 4:15 A.M. on June 1 the automobile with the claimant in the driver's seat was found in a culvert off the shoulder of Route 30 between Newton and

Olney. The auto had been proceeding in the direction of Robinson. Too, it was shown that the claimant had traveled Route 30 on an earlier business trip when returning from Johnston City to Robinson. At the time the auto was found, the surface of the highway was wet because of rain. It appears that the claimant had driven 320 to 350 miles from the time he left Robinson until the mishap. The claimant sustained a retrograde traumatic amnesia and has no recollection of what occurred between the time he talked to Jansco at the J and J Ranch on the night of May 31 and two and one half weeks later, when he was a patient in St. Luke's Hospital in St. Louis.

The claimant's injuries were severe. They included fractures of the left leg, which required amputation at the mid-calf and a brain injury which resulted in a loss of sensation, the claimant testified, in the left side, including his face, shoulder, arm and hand. Some months later as a result of the brain injury he developed a post-traumatic grand mal and suffered several seizures. He was given medication in an effort to bring the grand mal under control. Because of brain damage the claimant suffered from astereognosis, which is an inability to identify objects or forms by touch. He cannot hold an object in his left hand, he said, unless he looks at the object and concentrates on grasping it. He does not feel that the left arm is part of his body. Dr. George Roulhac, a neurosurgeon who attended the claimant, testified to his sensory loss on his left side and particularly in his arm. The claimant did not suffer from muscle weakness, he said, but he did suffer a loss of sense of position in his left hand. That is, he was unable to identify the position of his hand unless he was looking at it. There was definite immunization to pin prick in his left side, the physician related, and he had difficulty in recognizing objects placed in the left hand. A patient with astereognosis has to look at his hand and use his vision to identify objects in the hand and to observe the position of the hand. He found the claimant had a

diminished sensitivity to pain and could not measure with what force he might be gripping an object. The doctor said he was thus subject to injury in that he would be unable to tell the position of his hand and might not be aware of the presence of a flame or his nearness to machinery. Dr. Roulhac said that the claimant might be able to engage in work as a sales engineer but that the loss of sensation in the left hand would constitute a severe handicap, as he would have to keep observing his left hand to be able to use it. Unless he did this he would be unable to take objects of any size between his fingers. If he turned away he might drop the objects and would not then know that they had fallen. He was of the opinion that the claimant would have a permanent sensory loss. Dr. John Hetherington, a neurosurgeon who examined the claimant and testified on behalf of the employer, also found a condition of astereognosis. He acknowledged that if the claimant were not looking at his hand he could injure himself by pressing too forcefully on a sharp object. The doctor was of the opinion that the condition of loss of sensation might improve but he doubted it and felt that most of his impairment will be permanent. Dr. Hetherington acknowledged that the claimant's dexterity in the use of the left hand would only be as good as his view of the hand. He was of the opinion that there was some useful work the claimant could perform, work performable by an amputee and not requiring a great degree of dexterity.

We do not consider that the proof that the claimant's injuries arose out of and were sustained in the course of his employment was inadequate. It is clear that whether an injury arose out of and was in the course of employment typically is a question for the decision of the Industrial Commission, and its finding in this regard will not be disturbed on review unless it is against the manifest weight of the evidence. *(Brewster Motor Co. v. Industrial Com., 36 Ill.2d 443, 448.)* The finding here that the injury was incurred in the course of the claimant's employment and

arose out of it is not against the manifest weight of the evidence. At his employer's direction the claimant traveled to Johnston City to deliver the irrigation panel. He was an engineer, not simply a delivery man and it was reasonable that he might in the furtherance of his employer's interest discuss the installation of the panel and related questions. In any event the return trip to Robinson was certainly as much in the course of his employment as the travel from Robinson to Johnston City. The record shows no evidence whatever presented by the employer to challenge the business purpose of the claimant's conduct. We consider it clear that the employee's injuries arose out of and were sustained in the course of his employment.

Too, it cannot be said that the Commission's finding that the claimant suffered the permanent and complete loss of use of his left leg and arm was against the manifest weight of the evidence. Primarily, the nature and extent of a claimant's disability are matters for the determination of the Industrial Commission. *(Keystone Steel & Wire Co. v. Industrial Com., 42 Ill.2d 273.)* Conflicts, if any, in medical testimony are to be resolved by the Commission and its finding in this regard will not be disturbed unless contrary to the manifest weight of the evidence. *(Livingston Service Co. v. Industrial Com., 42 Ill.2d 313.)* There is no question as to the total loss of use of the claimant's leg. It is plain, too, that he sustained a grievous disability in the use of his left arm. We cannot say that the Commission's finding that he suffered a permanent and complete loss, within the meaning of the Workmen's Compensation Act, of the use of his left arm was contrary to the manifest weight of the evidence. *Keystone Steel & Wire Co. v. Industrial Com., 42 Ill.2d 273.*

For the reasons given, the judgment of the circuit court of Douglas County is affirmed.

*Judgment affirmed.*