(No. 45456.

M & M PARKING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Charles E. Johnson, Guardian of Mattie Hill, *et al.*, Appellees.)

*Opinion filed October 1, 1973.*

WILLIAM J. CATENA, of Chicago, for appellant.

ALLISON W. DAVIDSON, of Chicago, for appellees.

MR. CHIEF JUSTICE UNDERWOOD delivered the opinion of the court:

The claimant, Mattie Hill, by her guardian, filed an application for adjustment of claim under the Workmen's Compensation Act alleging that as the dependent aunt of Rossie Johnson she was entitled to an award of compensation on account of Johnson's death, which resulted from a

fall from an elevator on the premises of his employer, M & M Parking Company. Following a hearing before an arbitrator for the Commission, compensation was denied on the grounds that Johnson's death did not arise out of and in the course of his employment. After hearing additional evidence on review, the Industrial Commission set aside the arbitrator's decision and entered an award in favor of the claimant. The circuit court of Cook County affirmed, and the employer appeals from that judgment.

Three issues are raised on this appeal: (1) Were the Industrial Commission's findings that the decedent's death arose out of and in the course of his employment against the manifest weight of the evidence? (2) Were the earnings of the decedent on which the award was based proved within the purview of section 10 of the Workmen's Compensation Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.10)? and (3) Did the claimant establish that the decedent contributed 50 per cent or more to her support from his earnings as required by section 7(d) of the Act (Ill. Rev. Stat. 1969, ch. 48, par. 138.7(d))?

The evidence on the question of whether the decedent's death arose out of and in the course of the employment was undisputed. At the time of his death, the decedent was employed as a "car-hiker" by M & M Parking Company at a three-level parking ramp in Chicago. His duties included driving customer's cars to parking spaces on the upper levels and returning the cars to the lower level when customers were ready to depart from the ramp. At approximately 11:45 P.M. on May 2, 1970, the decedent arrived in his own car at the parking ramp and stopped to talk to a co-employee, William White. White testified that he got in the car with the decedent and drove with him to one of the upper floors where the decedent changed his clothes. According to White, the decedent was neat, looked very good and was in a good mood. White later saw the decedent downstairs when White ran by him on the way to get change for a customer. About five

minutes later, White went to the "man-lift" elevator used by employees to carry them from the ground floor to the upper levels and found the decedent lying by the elevator. The decedent was taken by ambulance to a hospital where he was pronounced dead on arrival.

Dr. Jerry Kearns, a pathologist for the coroner of Cook County who examined the body of Rossie Johnson, testified that Johnson had suffered a skull fracture and injuries to the right side of his body, and that the cause of death was "multiple injuries, extreme". In response to a hypothetical question, he testified that this was the type of injury which is seen in cases where a person has fallen. On cross-examination, Dr. Kearns further testified that routine blood tests performed during the autopsy revealed that Johnson's blood contained "201 milligrams per cent" of alcohol. He indicated that while he was aware that a person whose blood contained "100 milligrams per cent" was presumed to be under the influence of intoxicating liquors insofar as prosecution under the Motor Vehicle Code was concerned, he was not able to state what effect 201 milligrams per cent would have had on the behavior of the decedent, since that depended upon a number of factors of which he had no knowledge.

The employer's principal contention is that Dr. Kearns' testimony that there was "201 milligrams per cent" of alcohol in the decedent's blood established that he was drunk at the time he arrived for work at the M & M garage and that on the authority of *Emery Motor Livery Co. v. Industrial Com. (1920), 291 Ill. 532,* his death cannot be considered as arising out of his employment. This argument assumes that intoxication, in itself, is sufficient to defeat recovery under the Workmen's Compensation Act. That, however, is not the law of this State. Unlike workmen's compensation legislation in other States, our workmen's compensation act does not make intoxication the basis of a separate defense to recovery of an award. (See A. Larson, Workmen's Compensation Law,

par. 34.00.) As we stated in *Hahnemann Hospital v. Industrial Bd. (1918), 282 Ill. 316,* at 327, "Before drunkenness can be said to bar a recovery under the Workmen's Compensation act, the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment. [Citations.] Whenever an employee is so drunk and helpless that he can no longer follow his employment, he cannot be said to be engaged in his employment, and when injured while in that condition, his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury."

In the case before us, there was no evidence that the decedent was so intoxicated that he was unable to perform his duties as a car-hiker. To the contrary there was evidence that he had arrived at the parking ramp in his own car, had driven it to an upper level where he presumably parked it, had changed his clothes for work and had appeared to a co-employee to be in "very good" condition. In this respect and others, this case is clearly distinguishable from the *Emery* case relied upon by the employer. In *Emery*, the deceased employee worked as a chauffeur for a motor car livery service. While driving a customer, he drove so recklessly that the customer got out of the car and told the employee to take the car back to the garage. The customer then phoned the employer informing him that the employee was so intoxicated that he was not fit to drive a car and that the employer should send another car. There was evidence that the employee acted very intoxicated and could not stand steady or talk normally. When the employee returned to the garage, the night manager noted his condition and told him to go home and that he was through with him. The employee

was later found dead on the employer's premises. On these facts, this court held that after the employee was sent from the building in an unfit condition to be of further use to the employer he could no longer be considered in the employment of the motor livery company and that whatever occurred to him after his employment ceased could not be said to have occurred in the course of his employment. It can readily be seen that the facts in *Emery* bear little resemblance to those in the case at bar.

The employer further suggests that compensation should be denied here since it appears that the decedent may have met his death sometime prior to the start of his work shift. In support of this contention, he relies on *National Malleable & Steel Castings Co. v. Industrial Com. (1965), 32 Ill.2d 184,* where the fact that the decedent had not yet commenced his duties at the time he suffered a fatal heart attack was noted as an important fact. We do not find that case to be in point, since there the claimant was suffering from a coronary attack of four days duration prior to reporting for work, and the fact that the employee was not engaged in any physical labor at his place of employment after reporting for work was of obvious significance on the issue of whether his death arose out of his employment. Those factors are not present here. In this case, there was no definite testimony as to when the decedent's work shift started, and the Industrial Commission could well have inferred from the evidence that decedent had already commenced his duties at the time of his death. But even if we were to accept the employer's suggestion that the decedent's tour of duty did not begin until midnight, that would not bar recovery under the facts of this case. It is well settled that an injury accidentally received by an employee on the premises of his employer while going to or from his place of employment by a customary or permitted route, within a reasonable time before or after work, is received in the course of and arises out of his employment. (*Hiram Walker*

*& Sons, Inc. v. Industrial Com. (1968), 41 Ill.2d 429; Northwestern Steel and Wire Co. v. Industrial Com. (1962), 38 Ill.2d 441; Chmelik v. Vana (1964), 31 Ill.2d 272; Carr v. Industrial Com. (1962), 26 Ill.2d 347; DeHoyos v. Industrial Com. (1962), 26 Ill.2d 110.)* The record before us supports no other conclusion but that at the very least the decedent had changed his clothes and was preparing to commence his duties as a car-hiker at the time of his death, which according to the employer occurred a few minutes prior to midnight. If those were the facts, we are of the opinion that this case would clearly fall within the rule of *Hiram Walker* and other cases above cited.

We conclude, therefore, that notwithstanding the evidence as to the presence of alcohol in the decedent's blood, the possibility that decedent may have met his death shortly prior to the start of his work shift and the fact that there were no eyewitnesses to the occurrence, there was sufficient evidence from which the Industrial Commission could have concluded that the decedent died as a result of an accidental fall from the man-lift elevator and that his death arose out of and in the course of his employment.

The arbitrator's decision contained a finding that the annual earnings of the decedent were $4,160 and that his weekly average was $80. This finding was adopted by the Industrial Commission on review in computing benefits under section 7(d) of the Act. (Ill. Rev. Stat. 1969, ch. 48, par. 138.7(d).) We do not concur with the employer's contention that this finding was not supported by the evidence. The general manager of the M & M Parking Company testified that he hired the decedent as a full-time employee and that the decedent worked in that capacity from March 8, 1970, until the date of his death on May 2, 1970. The decedent's payroll records introduced in evidence showed that he was paid at the rate of $1.80 per hour and that he worked 426¼ hours over a period of 50

days, earning a gross salary of $767.25. It can readily be seen that his average daily gross salary was in excess of $15. Section 10(c) of the Workmen's Compensation Act provides: "If the injured person has not been engaged in the employment of the same employer for the full year immediately preceding the accident, the compensation shall be computed according to the annual earnings which persons of the same class in the same employment and same location, (or if that be impracticable, of neighboring employments of the same kind) have earned during such period." (Ill. Rev. Stat. 1969, ch. 48, par. 138.10(c).) Section 10(d) provides: "As to employees in employments in which it is the custom to operate throughout the working days of the year, the annual earnings, if not otherwise determinable, shall be regarded as 300 times the average daily earnings in such computation." (Ill. Rev. Stat. 1969, ch. 48, par. 138.10(d).) The record does not disclose whether the determination of the decedent's annual earnings was based on section 10(c) or section 10(d). We believe it is evident, however, that even if decedent's annual earnings could not be determined under section 10(c), there was ample evidence to establish his average daily earnings from which his annual earnings properly could be computed under the provisions of section 10(d). (*Cf., Vaught v. Industrial Com., (1972), 52 Ill.2d 158; K. and R. Delivery, Inc. v. Industrial Com. (1957), 11 Ill.2d 441; Puttkammer v. Industrial Com. (1939), 317 Ill. 497, Sinclair Refining Co. v. Industrial Com. (1925), 371 Ill. 541; Ruda v. Industrial Bd. (1918), 283 Ill. 550; Decatur Ry. & Light Co. v. Industrial Bd. (1917), 276 Ill. 472.*) We find no error in the Commission's finding as to the decedent's annual earnings for purposes of computing benefits under the Act.

Based upon its determination that the claimant was dependent upon the earnings of the decedent for her support to an extent sufficient to entitle her to the maximum amount of compensation provided for by

section 7(d) of the Workmen's Compensation Act, the Commission ordered that the claimant was entitled to the sum of $59 per week for a period of 284 weeks and one week at $44 in addition to the sum of $750 to be paid to the person who incurred the decedent's burial expenses. The employer contends that the award was in error in that the evidence was insufficient to establish that the claimant was dependent upon the decedent's earnings to the extent of 50 per cent or more of total dependency as required by section 7(d). Ill. Rev. Stat. 1969, ch. 48, par. 138.7(d).

The claimant, Mattie Hill, testified that her monthly living expenses were approximately $215, consisting of $135 for rent and $80 for food and other necessities. She testified further that although in the past she had other sources of income from her daughter and life insurance proceeds, her only source of income at the time of the decedent's death was $111 per month received from Social Security and money given to her by the decedent. As to the amount received from the decedent, Mrs. Hill testified that he brought her $30 or $40 periodically. Her testimony before the arbitrator was somewhat indefinite as to how often these payments were made. However, this matter was clarified in the hearing before the Commission where she testified that he gave her money at the rate of $30 or $40 per week but that he brought it to her every two weeks, i.e., a total of either $120 or $160 per month. Mrs. Hill also testified that the decedent occasionally brought her clothes and groceries. Mrs. Hill's testimony with respect to groceries was corroborated by the testimony of the decedent's co-worker, William White, who testified that he had been with the decedent on one occasion when he purchased two bags of groceries and took them to his aunt. The decedent's brother, Charles E. Johnson, also testified that on several occasions he had delivered $30, $35 or $40 to Mrs. Hill which the decedent

had given to him to give to her and that the last such delivery was approximately two weeks prior to the decedent's death.

Dependency under the Workmen's Compensation Act is a question of fact for the Industrial Commission, whose decision will not be set aside unless it is contrary to the manifest weight of the evidence. (*Carrion v. Industrial Com. (1939), 370 Ill. 374; Ritzman v. Industrial Com. (1933), 353 Ill. 34; Yellow Cab Co. v. Industrial Com. (1929), 333 Ill. 49.*) Our review of the evidence before the arbitrator and the Commission indicates that there was sufficient competent evidence to support a finding that of the claimant's monthly expenses of $215 the decedent contributed more than half by payment of either $120 or $160 in cash in addition to providing groceries and clothing on occasion. We conclude, therefore, that the decision of the Industrial Commission that the claimant was dependent at the time of the decedent's death on his earnings to the extent of 50 per cent or more of total dependency was not against the manifest weight of the evidence.

The judgment of the circuit court of Cook County affirming the decision of the Industrial Commission in favor of the claimant is affirmed.

*Judgment affirmed.*