VERA SWANK, Adm'r of the Estate of John D. Swank, Deceased, for the use and benefit of Vera Swank and John Peter Swank, a Minor, Plaintiff-Appellant, *v.* TED F. BERTUCA, d/b/a Ted's Warehouse, Defendant-Appellee.

Fourth District No. 13363

Opinion filed August 26, 1976.

Harlan Heller, Ltd., of Mattoon (Harlan Heller, of counsel), for appellant.

Jack E. Horsley and Richard F. Record, Jr., both of Craig & Craig, of Mattoon, and Jerrold Blumoff, of Chicago, for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

This action was brought to recover damages under the Illinois Dram Shop Act (Ill. Rev. Stat. 1971, ch. 43, par. 135) for alleged injury to means of support of John Peter Swank, posthumous son of John D. Swank, arising out of the death of John D. Swank, plaintiff's decedent. The jury

rendered a verdict for the defendant upon which the circuit court entered the judgment from which this appeal is taken.

The decedent had been drinking at defendant's tavern on the evening of May 3, 1972. While at defendant's tavern, the decedent met Mary McElvain and engaged in conversation with her. The decedent mentioned that he owned a Datsun 240-Z sportscar and that he would like to take her for a ride. McElvain agreed. The two individuals, with decedent driving, proceeded out to Illinois Route 130 and drove around until they came upon the Coles County Drag Strip which they entered and proceeded down the drag strip lane. At its end, decedent was unable to stop and he abruptly turned the car to the left causing it to roll over several times. The car eventually came to rest on the Penn Central Railroad tracks. McElvain was unhurt and was able to get out of the wrecked car. She then heard a train whistle and observed a light coming down the train track. She attempted to signal the train to stop by flailing her arms. The train did attempt to stop prior to hitting the wrecked vehicle; however, the train and vehicle collided and the car was carried approximately 2,000 feet down the track. The decedent died as the result of the injuries received.

The coroner of Coles County went to the scene of the accident and investigated. He subsequently took a blood sample from the heart of decedent's corpse. The sample was mailed to the Department of Public Health, Toxology Laboratories, located in Chicago, Illinois. The sample was analyzed by Veronica Roderman, a chemist with the Illinois Department of Public Health.

The cause was set for trial on January 6, 1975, and Roderman was required to appear at that time. Unknown to Roderman the cause had been continued due to the unavailability of a witness. In order to obviate the necessity of having Roderman make another journey back to Coles County at a subsequent time, when the case was again set for trial, the parties agreed to take Roderman's evidence deposition. Prior to taking her deposition, the parties stipulated in part as follows:

"It is stipulated that all objections shall be made at the time of the taking of the deposition."

During the course of the deposition, defense counsel interposed several objections regarding foundation for Roderman's testimony. Also, defense counsel attacked the plaintiff's chain of evidence regarding the blood samples which was the focus of Roderman's testimony.

When the matter went to trial, approximately one month later, defense counsel filed a motion in limine, for the suppression of Roderman's evidence deposition. The motion contained three separate paragraphs. Paragraph 3 of the motion provided that section 10(e) of the Coroner's Act (Ill. Rev. Stat. 1971, ch. 31, par. 10(e)) precluded the admission of the

findings of any examination involving the drawing of blood by the coroner or a duly authorized physician when acting pursuant to section 10 of the Coroner's Act. Plaintiff's attorney opposed the motion on the grounds that the reasons as heretofore stated were not raised at the time the deposition was taken in accordance with the stipulation. A hearing was held and the motion in limine was granted. In granting the motion, the record reveals that the court primarily relied on the statute in question. The court specifically stated that:

> "THE COURT: It seems to me that the blood was drawn under some attempt at complying with this particular provision of the Statute and it was passed for statistical purposes only, therefore the exclusion in the Statute for the admissibility of evidence. [sic.] Whether helpful or harmful, it makes no distinction in the Statute, and, therefore, as long as the Statute is in force, I don't feel the evidence is admissible. So in my decision, I'm relying on the Statute * * *."

During the course of the trial, the plaintiff made an offer of proof concerning the results of Roderman's analysis. The offer of proof was made by propounding the testimony of the coroner regarding the procedures used in extracting the blood sample from the decedent and by submitting Roderman's deposition to the court. Defendant renewed his objection. The objection was again sustained and plaintiff's offer was denied.

At the conclusion of the trial, the jury found for defendant and plaintiff appeals.

The plaintiff presents only one issue for review, "Did the defendant waive the right to object to the testimony of Veronica Roderman?"

Plaintiff argues that defendant simply waived the right to object to the results of the chemical analysis performed on decedent's blood as presented in Roderman's evidence deposition. Plaintiff contends that the evidence as found in Roderman's deposition dealt with extremely critical evidence which showed that the decedent was in an intoxicated state at the time of his death. Plaintiff notes that defendant's main reason for objecting to Roderman's deposition was that section 10 of the Coroner's Act precludes the use of such evidence, and reasons that because objection was not made at the time the deposition was taken, it was clearly waived by virtue of the stipulation. Defendant submits that the trial court's ruling was proper and should be affirmed. In addition, defendant also raises numerous issues on appeal, none of which are justiciable and, thus, will not be considered in disposing of this case.

■■ The general rule is that litigants may stipulate regarding matters involving the individual rights of the litigants themselves (*Central Illinois Public Service Co. v. Badgley* (1974), 24 Ill. App. 3d 294, 321 N.E.2d 26).

Courts look with favor upon stipulations which are designed to simplify, shorten or settle litigation and save the costs of the parties. Furthermore, matters subject to stipulation may relate to procedural or even evidentiary matters. *Central Illinois Public Service Co. v. Badgley.*

The stipulations entered into in this case most certainly went to all objections regarding the form and manner of questions as they arose during the deposition. The central inquiry is whether the stipulations also covered objections involving the application of substantive laws and rights.

■■ Plaintiff submits that the stipulation was universal in nature and import; and cites numerous cases to support her theory that such a stipulation is binding on a defendant and included any and all objections which could have been made at the time the deposition was taken. Defendant suggests that the stipulation in actuality only applies to the form and manner of questioning, not to the substance; and that there was no waiver of the objection in question. This court, however, need not decide the issue based upon the aforementioned arguments. We are aware of the exception to the general rule, as aforecited, regarding stipulations. This exception is that a litigant may not stipulate or waive a right which in fact would result in the compromise of a public policy. (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 312 N.E.2d 620.) Courts will not acknowledge a stipulation which is contrary to public policy. We believe that no litigant can stipulate away, either intentionally or inadvertently, the mandate of section 10 of the Coroner's Act. The statute in part states:

"In cases of accidental death occurring during the period from July 1, 1971 to June 30, 1973 and involving a motor vehicle in which the decedent was (1) the operator or a suspected operator of a motor vehicle, or (2) a pedestrian 16 years of age or older, the coroner shall require that a blood specimen of at least 10 cc. be withdrawn from the body of the decedent within 6 hours of the accident causing his death, * * *.

If the county does not maintain laboratory facilities for making such analysis, the blood so drawn shall be sent to the Department of Public Health for analysis of the alcohol, carbon monoxide, and dangerous or narcotic drug content of such blood specimen. * * * The results of the statistical examinations referred to in this paragraph shall not be admissible [*sic*] in evidence in any action of any kind in any court or before any tribunal, board, agency or person, but shall be used only for statistical purposes. * * *" Ill. Rev. Stat. 1971, ch. 31, par. 10(e).

The legislature embodied a specific public policy into the statute and we are bound to follow that policy. The statute is designed to assist the

Department of Public Health in gathering statistical data. The policy is clearly underlined by the fact that any person drawing blood pursuant to the Act is given immunity from all civil or criminal liability which might result from his actions.

We find that the defendant did not and, in fact, could not waive his right to object to the use of the data obtained as a result of procedures found in section 10 of the Coroner's Act. The public policy announced therein is clear and unequivocable and cannot be waived. Accordingly, the ruling of the trial court was correct and we affirm the judgment of the circuit court.

Affirmed.

CRAVEN, P. J., and GREEN, J., concur.