(No. 52231.-

DISTRICT 141, INTERNATIONAL ASSOCIATION OF MACHINISTS & AEROSPACE WORKERS, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Maria A. Stutz, Appellee).

*Opinion filed April 18, 1980.—Rehearing denied May 29, 1980.*

UNDERWOOD, RYAN, and KLUCZYNSKI, JJ., dissenting.

Van Duzer, Gershon, Jordan & Petersen, of Chicago (John B. Van Duzer and Horace W. Jordan, of counsel), for appellant.

Norback, DuRard, Belkin & Carcione, Inc., of San Mateo, California (Robert L. Durard, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The claimant, Maria A. Stutz, is the widow of Adolph Stutz, the assistant general chairman of District 141, International Association of Machinists and Aerospace Workers (District 141). Adolph Stutz suffered fatal injuries in an automobile accident on the night of May 6, 1976. His widow filed a claim for death benefits with the California Workers' Compensation Appeals Board on May 19, 1976. This claim was dismissed without prejudice, subject to reinstatement. On July 8, 1976, the claimant filed an application for adjustment of claim under the Illinois Workmen's Compensation Act (Ill. Rev. Stat. 1975, ch. 48, par. 138.1 *et seq*.). The arbitrator denied compensation. On review, the Industrial Commission reversed and awarded compensation to the claimant. The circuit court of Cook County confirmed the Commission's decision. District 141 appeals directly to this court under Rule 302(a). 73 Ill. 2d R. 302(a).

It was stipulated by the parties that at the time of his death on May 6, 1976, Adolph Stutz held the elective office of assistant general chairman of District 141. Further, it was stipulated that the office of District 141 was located in Burlingame, California. Stutz had an office there and his work was localized there. Stutz was sent to Chicago by the general chairman of District 141 to perform three tasks: to participate in a "Fourth Step Grievance Hearing" against United Airlines on behalf of a union

member: to attend class and craft hearings at the request of an official of the International Association; and, to begin to negotiate an agreement with United Airlines on behalf of certain communication workers. Stutz' attendance at the class and craft hearings would primarily benefit the International. His participation in the grievance hearing and the negotiations with United Airlines were both tasks to be performed for the benefit of District 141. The negotiations were to begin on May 7, 1976, the day after the fatal accident occurred.

On May 6, 1976, at about 5 p.m., Stutz met with Alfred Carmona, a Local 1487 official; Elton Barstead, an International official; and James Highsaw, an attorney for the International. Earlier that day Stutz had attended the grievance hearing and the class and craft hearings. The meeting was requested by Barstead to discuss the class and craft hearings. The meeting took place in a restaurant and lounge which was adjacent to the hotel where Barstead and Highsaw were staying. Other union business was also discussed at this time.

The uncontradicted testimony of both Barstead and Carmona was that Stutz was drinking alcoholic beverages during these meetings, as were the other persons. Carmona also testified that he could not remember what happened from 6:30 p.m. onward until he woke up the next morning in the hospital.

Barstead testified that he had seen Stutz in Chicago on union business on 20 or 30 occasions. He also testified that he and Highsaw left Stutz and Carmona in the bar at 7 p.m. When Barstead returned at 9 p.m., Stutz and Carmona were still there. Barstead stated he discussed some additional union business before leaving Stutz and Carmona at 10:15 p.m. Barton Kendall, a United Airlines employee who was acquainted with Carmona, testified at the arbitration hearing that he observed Carmona and a

man he later learned was Stutz, leaving the bar at 11 p.m. Kendall stated they looked as though they had been "whooping," and "living it up." Stutz and Carmona got into Carmona's car, with Stutz driving. They left the parking lot, ascended an inclined overpass and, as they crested the overpass, struck a Department of Highways truck which was proceeding in the far left lane at 2 to 3 miles per hour. The truck had a flashing yellow light and a large arrow attached to the rear of the truck pointing to the right. Stutz was pronounced dead on arrival at the hospital. Carmona suffered only minor injuries.

The first issue we consider is whether the Commission possessed subject matter jurisdiction to hear this matter. District 141 contends that when the claimant filed her claim in California, she elected her remedy and may not pursue relief in Illinois. The applicable Illinois statutory provision states:

> "An employee or his dependents under this Act who shall have a cause of action by reason of any injury, disablement or death arising out of and in the course of his employment may elect to pursue his remedy in the State where injured or disabled, or in the State where the contract of hire is made, or in the State where the employment is principally localized." (Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2).)

Clearly the language of the Act is permissive in allowing the claimant to file a claim in any of the three forums mentioned. Our inquiry becomes whether a claimant who files a claim where the employment is principally localized, and then dismisses it, elects her remedy and is thereby precluded from filing a claim in another jurisdiction. The prevailing law in Illinois on election of remedies was set forth in *Faber, Coe & Gregg, Inc. v. First National Bank* (1969), 107 Ill. App. 2d 204, 211:

> " 'The formal doctrine of election of remedies by judicial decision has been confined gradually to its true remedial purpose as a doctrine of sub-

stance; and as stated by an eminent authority on trusts and trustees, should be confined to cases "where (1) double compensation of the plaintiff is threatened or (2) the defendant has actually been misled by the plaintiff's conduct or (3) res adjudicata can be applied." Bogert, Trusts and Trustees, 1935 Vol. IV, sec. 946.' "

(Accord, *Altom v. Hawes* (1978), 63 Ill. App. 3d 659, 663; *Schwartz v. City of Chicago* (1974), 21 Ill. App. 3d 84, 94.) There is no threat of double compensation on this record; District 141 has not been misled by the claimant's acts; and there has been no decision rendered in the California proceeding which would invoke the doctrine of *res judicata*. Thus, the claimant has not elected a remedy to the extent required by Illinois law so as to prevent the Commission from exercising jurisdiction over her claim.

District 141 next contends that the claimant is not entitled to receive an award because Adoph Stutz was an elected union official and not an employee of the union. It is argued by District 141 that the "dual capacity doctrine" (*B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, 420) should apply to prevent the payment of compensation because Stutz was an elected officer of the union engaged in official duties and not an employee. This court adopted the dual-capacity doctrine in *Stevens v. Industrial Com.* (1931), 346 Ill. 495. There a printer who was also the secretary-treasurer and a 48% shareholder of a corporation was killed when struck by an automobile while returning from collecting a business debt. The court held that if one is acting in his official capacity as an executive manager of a company and is not doing the work of an employee, he is not covered under the Workmen's Compensation Act. (*Stevens v. Industrial Com.* (1931), 346 Ill. 495, 500.) The claimant-widow in *Stevens* was allowed compensation on account of

the death of her husband. It was said that the decedent had not been acting in his official capacity as secretary-treasurer but as an employee when he left his office and endeavored to collect an account due from a debtor.

The definition of an employee under our Workmen's Compensation Act is in pertinent part:

> "Every person in the service of another under any contract of hire, express or implied, oral or written, including persons whose employment is outside of the State of Illinois where the contract of hire is made within the State of Illinois, persons whose employment results in fatal or non-fatal injuries within the State of Illinois where the contract of hire is made outside of the State of Illinois, and persons whose employment is principally localized within the State of Illinois, regardless of the place of the accident or the place where the contract of hire was made, and including aliens, and minors who, for the purpose of this Act are considered the same and have the same power to contract, receive payments and give quittances therefor, as adult employees." Ill. Rev. Stat. 1975, ch. 48, par. 138.1(b)(2).

The dual-capacity doctrine ostensibly prevents officers, directors or shareholders from claiming compensation when the corporate form is disregarded to the extent that the person becomes his own employer. (*B. W. Sales Co. v. Industrial Com*. (1966), 35 Ill. 2d 418, 421.) However, under the dual capacity doctrine "an officer, director or stockholder will not be denied compensation merely because he is an officer, director or stockholder, if, as a matter of fact, at the time of his injury he is engaged in manual labor or the ordinary duties of a workman and receives pay in the capacity of an employee, or if he was engaged in employment palpably separate and distinct from the official duties falling upon him as an officer of the corporation." *B. W. Sales Co. v. Industrial Com.* (1966), 35 Ill. 2d 418, 420. See *Master Leakfinding Co. v. Industrial Com.* (1977), 67 Ill. 2d 517 (sole shareholder

found to be employee).

In any event, we think that the dual-capacity doctrine has no equivalent application to union officials. They are elected or hired to work for the union. In return, they are paid a salary fixed by the union's bylaws. While the nature of the work is executive, that fact does not remove officials from protection under the Act. "The [A]ct applies automatically not only to the corporation but to all its employees, regardless of the kind of work in which they may be engaged. [Citations.] " (*Stevens v. Industrial Com.* (1931), 346 Ill. 495, 498.) The most significant fact, however, is that a union official does not own any shares or any other interest in the union, nor does he exercise absolute control over its operation. A union official is employed for a specified term by the union membership. He is responsible to them and must act for their sole benefit. Thus, the dual-capacity doctrine does not apply in this case. Stutz was an employee of District 141.

The next issue raised by District 141 is whether Stutz was an employee of District 141 or of the International Association, the parent union. The Commission found that Stutz was an employee of District 141, and we will not disturb its findings unless they are against the manifest weight of the evidence. (*Parro Construction Corp. v. Industrial Com.* (1970), 45 Ill. 2d 367, 371.) In *Parro,* a consolidated case, two employees were killed in an airplane crash while on a business trip. Even though each of the decedents performed work for other, related corporations, the Commission found that they were employed by Parro Construction Corporation alone. This court refused to disturb those findings.

Stutz was in Chicago at the request of the general chairman of District 141. While one of the three tasks he was to perform was directly beneficial to the International Association, that is not to say it was not also of benefit to District 141. Moreover, the other two tasks

Stutz was to perform were for the express benefit of District 141. Finally, though Barstead, the International Association official, testified that the conversations in the bar involved International Association business in the main, Camora testified that he could recall discussing local union business with Stutz prior to 6:30 p.m. The Commission's finding that Stutz was an employee of District 141 at the time of his death was not against the manifest weight of the evidence.

District 141 next contends that Stutz's fatal accident did not arise out of and in the course of his employment. We do not agree. It is undisputed that Stutz was a traveling employee and, as such, his fatal injuries may be compensable even though he might have been engaged in activities other than those he was specifically instructed to perform by his employer. (*Wright v. Industrial Com.* (1975), 62 Ill. 2d 65, 69.) With regard to traveling employees this court has set down the following rule:

"The Workmen's Compensation Act was not intended to insure employees against all accidental injuries but only those which arise out of acts which the employee is instructed to perform by his employer; acts which he has a common law or statutory duty to perform while performing duties for his employer [citations]; or acts which the employee might be reasonably expected to perform incident to his assigned duties. [Citations.]" (*Ace Pest Control, Inc. v. Industrial Com.* (1965), 32 Ill. 2d 386, 388; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 510.)

Moreover, "[w]hether an injury to a traveling employee arises 'out of and in the course of' his employment and is therefore compensable is to be determined, as we indicated in *Ace Pest Control* [(1965), 32 Ill. 2d 386,] by the reasonableness of the conduct in which the employee is engaged at the time of injury. *** In the final analysis,

the result depends upon the reasonableness of the specific conduct and whether it might normally be anticipated or foreseen by the employer \*\*\*." (*U.S. Industries v. Industrial Com.* (1968), 40 Ill. 2d 469, 474-75.) In *U.S. Industries* this court concluded that a "midnight pleasure drive in unfamiliar, mountainous terrain" was an "unanticipated, unforeseeable and unreasonable activity" not arising out of or in the course of the claimant's employment. (40 Ill. 2d 469, 475.) The instant case is decidedly different in that Stutz had been about his employer's business throughout the evening, albeit while engaging in socializing as well. At the time of his fatal accident Stutz was heading in the direction of his motel. Carmona, the passenger and owner of the car, lived in the opposite direction. It could reasonably be inferred by the Commission that Stutz and Carmona were driving to Stutz' motel. It was certainly reasonable, foreseeable and incidental to his employment for Stutz to return to his motel for the night via a highway. The fact that Stutz was driving Carmona's car cannot be said to be either unreasonable or unforeseeable so as to warrant substituting our judgment for the Commission's. A similar case is *Bradford Supply Co. v. Industrial Com.* (1971), 50 Ill. 2d 190. The claimant was a traveling employee who, in the course of conducting business, consumed five or six beers in a four- or five-hour period. Several hours later the injured claimant was discovered in the driver's seat of his automobile, in a culvert to the side of a highway. The car had been proceeding in the direction of the claimant's home, which was 180 miles from the town he had left. This court refused to disturb the finding of the Industrial Commission that the claimant's injuries were received on his journey back home and did arise out of and in the course of his employment. (50 Ill. 2d 190, 194-95.) We think the same principle should control here. Thus we conclude that Stutz' accidental death arose out of and in the course of

his employment.

The final contention made by District 141 is that Stutz was intoxicated at the time of the fatal accident. As a threshold issue, it is argued by the claimant that the decedent's blood-alcohol count of 186 milligrams per cent was not admissible at the arbitration hearing pursuant to section 10(e) of the coroner's act (Ill. Rev. Stat. 1975, ch. 31, par. 10(e)). That section provides in pertinent part:

> "In cases of accidental death involving a motor vehicle ***, the coroner shall require that a blood specimen of at least 10 cc. *** be withdrawn from the body of the decedent [and analyzed] ***. *** The results of the statistical examinations referred to in this paragraph shall not be admissible in evidence in any action of any kind in any court or before any tribunal, board, agency or person, but shall be used only for statistical purposes." Ill. Rev. Stat. 1975, ch. 31, par. 10(e).

District 141 rejoins that the results of the blood-alcohol analysis were admitted into evidence pursuant to a stipulation made by the parties, and thus is binding on the parties. Additionally, District 141 argues that the claimant may not raise an objection to the admission of the test result for the first time on appeal; any error has been waived. We agree. The claimant refers us to the case of *Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, where the appellate court held that a stipulation that all objections must be made at the time of the taking of an evidence deposition or not at all would not operate to waive the objections to the admission of a blood sample from the decedent. The decedent therein had been killed in an automobile accident after leaving the defendant's bar. The decedent's personal representative brought a dramshop action arguing he was intoxicated at the time of the accident. A deposition was taken from a chemist employed by the Illinois Department of Public Health. The defendant made a motion *in limine* to suppress the chemist's

finding as a result of taking the blood sample, citing section 10(e) of the coroner's act. The trial court granted the motion and the appellate court affirmed. It stated: "[A] litigant may not stipulate or waive a right which in fact would result in the compromise of a public policy. (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 312 N.E.2d 620.) Courts will not acknowledge a stipulation which is contrary to public policy. We believe that no litigant can stipulate away, either intentionally or inadvertently, the mandate of section 10 of the Coroner's Act." (*Swank v. Bertuca* (1976), 41 Ill. App. 3d 229, 232.) While the appellate court's holding is correct, we note that it affirmed the trial court's exclusion of the blood-analysis result by means of a pretrial motion. Here, Stutz' blood-alcohol count has already been admitted in proceedings before the arbitrator, the Commission and the circuit court. If the claimant had objected to the admission of the blood-alcohol test prior to its admission into evidence, as in *Swank,* her point would be well taken. However, the claimant agreed to the admission into evidence of the test result and did not object to its admission until this appeal. "A party cannot sit by and permit evidence to be introduced without objection and upon appeal urge objections which might have been obviated if made at the trial." (*American Car & Foundry Co. v. Industrial Com.* (1929), 335 Ill. 322, 332; *David Wexler & Co. v. Industrial Com.* (1972), 52 Ill. 2d 506, 509 (objection raised for the first time on appeal that a statement in a deposition violated the hearsay rule and the Dead Man's Act).) Thus, the claimant's objection is waived.

In order for compensation to be denied on the basis that an employee was intoxicated, "the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law, that the injury arose out of his drunken condition and not out of his employment. (*Frith v. Owners of Steamship Louisianian,* 2 K. B. 155;

5 B. W. C. C. 410; *O'Brian v. Star Line,* 45 Scotch L. T. 935; 1 B. W. C. C. 177.) Whenever an employee is so drunk and helpless that he can no longer follow his employment he cannot be said to be engaged in his employment, and when injured in that condition his injury does not arise out of his employment. But intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury. Our statute was not designed to make contributory negligence of the employee, or a defense of that nature, a bar to his recovery under the Workmen's Compensation act, where, as in this case, his injury arose out of and in the course of his employment. *Alexander v. Industrial Board,* 281 Ill. 201." *Hahnemann Hospital v. Industrial Board* (1918), 282 Ill. 316, 327; *M & M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 256.

The evidence in this case is conflicting as to whether Stutz was so intoxicated at the time of his accidental death that he could no longer follow his employment. Barstead, the International Association official, testified that until 10:15 p.m., when he left the bar, Stutz was coherent and fully able to discuss complicated union business. Barton Kendall, who observed Stutz and Carmona leaving the bar, testified they were leaning against a wall, one of the men had his arm around the other, and they were "whooping," and "living it up." Finally, Michael I. Schaffer, a toxicologist employed by the Cook County Medical Examiner's office, testified that he could only testify with certainty as to the blood level of alcohol found in Stutz' body. Schaffer said that any opinion he might venture as to Stutz' intoxication would be "subjective" and would have to take into account Stutz' tolerance for the alcohol he had consumed. Schaffer stated further that he was unable to do that since he did not know Stutz' capacity or tolerance for

alcohol consumption. Schaffer did not conduct the blood-alcohol test on Stutz and was not employed by the Cook County Medical Examiner until August 1976, several months after the accident in question.

We will not disturb findings of the Industrial Commission where the Commission has resolved disputed factual questions, drawn reasonable inferences and conclusions, and judged the credibility of witnesses unless they are contrary to the manifest weight of the evidence. (*Phelps v. Industrial Com.* (1979), 77 Ill. 2d 72, 74-75.) The Commission found that Stutz' conduct on the night of May 6, 1976, was reasonable and foreseeable and thus arose out of and in the course of his employment. We cannot say that his conduct was otherwise in view of the conflicting evidence regarding the extent of Stutz' state of intoxication. It is potentially reasonable and foreseeable that a union officer would sit in a lounge and discuss union business with other union officers over several drinks. We cannot say that that behavior is so unreasonable or unforeseeable as to render the Commission's decision contrary to the manifest weight of the evidence.

Accordingly, for the reasons stated, the judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

MR. JUSTICE UNDERWOOD, dissenting:

I agree that a reasonable amount of drinking may be included within the course of employment of one in claimant's position. When that drinking reaches the degree of intoxication manifested in this record, however, a finding that a resulting injury arises out of and in the course of employment is, in my judgment, contrary to the manifest weight of the evidence. (1A A. Larson, Workmen's Compensation sec. 34.00 (1979).) I believe the arbitrator in this case correctly denied compensation.

MR. JUSTICE KLUCZYNSKI joins in this dissent.

MR. JUSTICE RYAN, also dissenting:

The tragic event involved in this case has caused some reluctance on my part to write a dissent and especially to write in the manner which I propose. However, the opinion adopted by the majority compels me to speak out and to do so rather forthrightly. It is difficult to remain silent while my colleagues eliminate from this case the requirement of our Workmen's Compensation Act that, to be compensable, one's injury must arise out of and in the course of one's employment.

I am sure that anyone who studied criminal law under the late Dean Albert J. Harno at the University of Illinois recalls, as I do, the following bit of learning. This trivia must certainly be the theme or text of the majority opinion.

> " 'Not drunk is he who from the floor, can rise again and drink once more; But drunk is he who prostrate lies, and can neither drink nor rise.' " A. Harno, Cases and Materials on Criminal Law and Procedure 194 n.1a (3d ed. 1950); Rogers, *Drunk*, 35 Law Notes 112, 113 (1931).

See also 1A A. Larson, Workmen's Compensation sec. 34.10, at 6–62 (1979).

The majority opinion, with its recitation of accepted holdings concerning traveling employees and concluding that Stutz was in the course of his employment because it "was certainly reasonable, foreseeable and incidental to his employment for Stutz to return to his motel for the night via a highway" (79 Ill. 2d at 555) must have been written with tongue in cheek. It certainly was not reasonable or foreseeable (at least reasonably foreseeable) to conclude that he would be driving someone else's car in a highly intoxicated condition and would run into the rear of a maintenance vehicle with its warning devices in operation.

The record discloses that the employee was *drunk*! Regardless of how the opinion tries to rationalize his conduct or gloss over this fact, he was so intoxicated he came

close to qualifying within the definition quoted above. The evidence shows that he was drinking in the same lounge at least from 5 p.m. until 11 or 11:30 p.m. When he and his companion were leaving the lounge, they were talking in loud voices and were described as "whooping it up." A witness who observed Stutz and his companion as they were leaving the lounge, and just minutes before the fatal accident, stated that they appeared to have been drinking. The witness saw the two of them leaning against the front of the building, and as they attempted to walk away from the building to their vehicle, they were so unsteady they were holding on to each other. Stutz undertook to drive his companion's vehicle, and the companion, for some reason, got into the rear seat of the vehicle, or at least he was found in the rear seat following the collision. A short distance after leaving the lounge parking lot, Stutz drove the automobile into the rear of a highway maintenance vehicle, a dump truck. This vehicle was not blocking the highway. It was proceeding in a southerly direction, as was Stutz. There were multiple lanes for traffic in each direction. The maintenance vehicle was driving south in the inner lane next to the median. All of its lights were in operation, including a revolving yellow light on the top of the truck which a witness estimated to have been about 8 feet above the ground. There was a large orange sign on the rear of the truck, and the witness who had left the lounge parking lot just ahead of Stutz testified that, when he passed the truck, it had a large lighted yellow arrow mounted on it directing cars to pass on the right. The witness could not remember whether or not the arrow was flashing, but he did state that it was lighted and it was between 3 and 6 feet in size. The car Stutz was driving left no skid marks on the pavement, indicating that the brakes had not been applied prior to impact. The employee's blood alcohol content was 186 milligrams or .186% of alcohol by weight. The Illinois Vehicle Code provides that

a blood analysis of .05% to .10% may be considered as evidence, along with other competent evidence, in determining whether a person was under the influence of intoxicating liquor. But if there was, at the time of the analysis, .10% or more by weight of alcohol in the person's blood, *it shall be presumed* that the person was under the influence of intoxicating liquor. (Ill. Rev. Stat. 1975, ch. 95½, pars. 11–501(c)(2), (3).) In this case, the analysis showed that the employee's blood contained substantially more than is required to raise the presumption of intoxication.

Admittedly, intoxication alone does not necessarily constitute a departure from employment sufficient to preclude recovery under the Workmen's Compensation Act. However, voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment. (See 1A A. Larson, Workmen's Compensation sec. 34.00 (1979).) And when the employee is injured in that condition, his injury does not arise out of his employment. *M & M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 256.

In our case the only conceivable act pertaining to the employee's employment which he was performing at the time of the accident was the act of returning to his motel. This could be considered as being in the course of his employment only because of his status as a traveling employee. He did not take a taxi or attempt to acquire any other safe means of transportation. Instead, he undertook to drive his companion's automobile, an act which his intoxication rendered him totally incapable of performing, and an act which the law prohibited him from performing. There is no evidence that the collision with the rear of this well-lighted truck, with its many warning devices, had any causative origin other than the undisputed intoxicated condition of the employee.

The majority does not find otherwise, but instead

states that "[t] he evidence *** is conflicting as to whether Stutz was so intoxicated at the time of his accidental death that he could no longer follow his employment." (79 Ill. 2d at 558.) The record does not support this statement. The only evidence that could possibly support the conclusion as to conflicting evidence in the majority opinion was a statement by a person who had, himself, been drinking with Stutz from 5 p.m. to 7 p.m., and again from 9 p.m. until about 10 p.m. That person said that when he left Stutz about 10 p.m., he was of the opinion that Stutz had not been drinking "excessively." That observation was made an hour and a half before the accident, and the witness admitted that he, himself, had consumed "about four or five drinks" during the evening. Whatever Stutz's condition may have been at 10 p.m. is not evidence of what his condition was after another hour or more of drinking when he drove an automobile into the rear of the plainly marked maintenance vehicle. Anyone who acted as Stutz did at the lounge, whose blood alcohol content was .186%, and who ran into the rear of a plainly marked maintenance vehicle, under the conditions noted above, was plainly too intoxicated to drive an automobile. The accident could be attributed to no other cause.

It is well established that the Workmen's Compensation Act must be liberally construed to accomplish its purposes and objects. (*Pathfinder Co. v. Industrial Com.* (1976), 62 Ill. 2d 556, 563.) However, rational boundaries must be defined to establish the limits of compensable recovery. Otherwise this court will not be reviewing workmen's compensation decisions relating to injuries arising out of and in the course of employment but, instead, will simply be approving the distribution of charitable awards, the making of which, regardless of our sympathies, is not the purpose of the Workmen's Compensation Act.