FREEMAN UNITED COAL MINING COMPANY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (Ivarene J. Roemer, widow of Auburn Baisil Roemer, Deceased, *et al.*, Appellees).

Fourth District (Industrial Commission Division) No. 4—86—0876WC

Opinion filed September 10, 1987.

Robert L. Mueller, of Livingstone, Mueller, Gunning, O'Brien & Davlin, of Springfield, for appellant.

William LaMarca, of Calandrino, Logan & LaMarca, P.C., of Springfield, for appellees.

JUSTICE McNAMARA delivered the opinion of the court:

Freeman United Coal Mining Co. appeals from a circuit court order affirming the Industrial Commission's award of worker's compensation benefits to petitioner Ivarene Roemer as surviving widow of Auburn Baisil Roemer. On appeal, Freeman United maintains that the finding of the Commission that Roemer's death arose out of and in the course of his employment is against the manifest weight of the evidence.

Decedent was employed by Freeman United as a watchman on its property near Farmersville, Illinois. On December 24, 1980, decedent worked the 3 p.m. to 11 p.m. shift. He was relieved of duty at ap-

proximately 11 p.m. by Jack Evans. When Evans arrived, decedent was in his truck ready to leave. Evans did not notice anything unusual about decedent driving away. Evans did not leave the building to which he was assigned until 5 a.m. At that time, Evans found decedent lying on the ground near the entrance gate to the property. The right side of the gate was closed, while the left side remained open. Decedent was on the inside of the gate by the left side. Decedent's truck was stopped on the outside of the gate with the gate against it, the truck engine was running, and the headlights were on. Evans testified that part of the duties of the night watchman was to close and lock the gate upon leaving.

Evans further testified that the temperature that night was approximately 9° below zero, visibility was poor, the wind was blowing, and it was snowing. The ground where decedent fell was on a small incline and was slick, snowy, and a little icy. According to Evans, the ground was rough in places, with rocks. The gate where decedent was found was approximately 200 yards from the shop where the watchman sits and the gate area is unlighted. Evans also testified that he found a quart bottle of liquor, with a few glasses remaining, in the office where decedent had been on duty. Evans did not know whether decedent drank on the job.

When Evans found decedent on the ground, he was still alive, although unconscious. Decedent died at a medical center just before 8 a.m. on December 25. Dr. John Dietrich testified by deposition that death was due to exposure. The postmortem examination revealed a blood alcohol level of .155% and a urine alcohol level of .306%. This examination also revealed recent superficial abrasions on the bridge of decedent's nose and a bruise on his forehead. Dr. Dietrich testified that he could not give an opinion on intoxication or state whether decedent could have performed his duties without having observed him prior to the accident.

The arbitrator, without mentioning the intoxication defense, found the evidence did not establish that decedent sustained accidental injuries arising out of and in the course of his employment, causing death by exposure. The arbitrator denied petitioner's claim for compensation.

On review, the Commission reversed the findings of the arbitrator, holding that decedent sustained accidental injuries arising out of and in the course of his employment resulting in his death and that petitioner was entitled to survivor's benefits and expenses. The Commission held that decedent experienced an unexplained fall while closing the gate in the course of his employment and that the weather

and road conditions at the site of the accident were such that it is probable they caused decedent to fall. The Commission further found that the employer failed to sustain the defense of intoxication because there was no evidence that decedent was so intoxicated that he could not perform the duties of his employment. The circuit court of Macoupin County confirmed the decision of the Commission.

On appeal, the employer contends that the finding of the Commission that petitioner was entitled to benefits because decedent's accident arose out of and in the course of his employment is against the manifest weight of the evidence.

It is not disputed between the parties that decedent was performing his duties as a night watchman at the time of the accident. Decedent's co-worker, Evans, testified that it was part of those duties to close and lock the gate when leaving. The employer argues, however, citing a number of exposure cases, that decedent was not subject to a risk of exposure greater than the risk to which the general public is subject and, therefore, petitioner should have been denied compensation. The employer essentially argues that intoxication is the only explanation for decedent's fall and if decedent had not been intoxicated, he would not have fallen or would have been able to get up after falling, and would not have been exposed to the elements for over six hours. We do not agree.

Evidence in the record established that the weather conditions and the ground where decedent fell may have caused his accident. The temperature was below zero and it was snowing. The ground was on a slight incline, rough, snow covered and a little icy. Evans testified that when he entered through the same gate to relieve decedent, he had a difficult time with the gate and the lock.

The employer also argues that the minor extent of decedent's injuries belies the loss of consciousness that resulted in extended exposure. Although Dr. Dietrich called decedent's injuries superficial with no evidence of underlying injury, he could not state that the injuries were not sufficient to cause loss of consciousness. This evidence was before the Commission and we cannot say upon review that any inferences made by the Commission regarding the cause of decedent's fall or loss of consciousness were erroneous.

Even assuming decedent was intoxicated, the Workers' Compensation Act does not treat intoxication as a defense to the recovery of an award. (*M & M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 302 N.E.2d 265.) Before intoxication can be said to bar recovery under the Act, the employee must be so intoxicated, as shown by the evidence, that the court can say, as a matter of law,

that the injury arose out of the intoxicated condition and not out of the employment. (*District 141, International Association of Machinists & Aerospace Workers v. Industrial Com.* (1980), 79 Ill. 2d 544, 404 N.E.2d 787; *M & M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 302 N.E.2d 265.) Voluntary intoxication which renders an employee incapable of performing his work is a departure from the course of employment (A. Larson, 1A Workmen's Compensation Law sec. 34.00, (1985)), and when an employee is injured in that condition, his injury does not arise out of his employment. *M & M Parking Co. v. Industrial Com.* (1973), 55 Ill. 2d 252, 302 N.E.2d 265.

The record here does not support a conclusion, as a matter of law, that decedent was so intoxicated he was unable to perform his duties as a watchman. Decedent was in the process of his job duties at the time of his accident, and the record includes uncontradicted evidence that the ground where decedent fell was on a slight incline, rough and icy. The medical evidence showed that decedent died of exposure. Results of the postmortem examination showed an abrasion on the bridge of his nose and a bruise on his forehead which were consistent with a fall.

The record does include evidence of intoxication. Evans found a liquor bottle, with a few glasses remaining, in the office where decedent worked. While the employer argues that Evans equivocated on whether he told the investigating deputy that decedent was drunk, Evans actually testified that he did not remember telling the deputy this, but he would not state that he did not say it. The evidence shows, however, that decedent was already in the truck when Evans arrived. They spoke only a few words and Evans observed nothing unusual about decedent driving away. Decedent's speech was not mumbled, as the employer contends, but Evans testified that decedent mumbled a reply while driving away in response to Evans' request that decedent shut the gate.

■ The medical evidence of intoxication revealed that decedent had a blood alcohol level of .155%, and a urine alcohol level of .306%, indicating an alcohol intake of some duration before death. Dr. Dietrich could not comment on decedent's level of intoxication or job impairment without having seen him before the accident. The record contains no evidence on the effect of the alcohol on decedent's job performance. While Dr. Dietrich described decedent's injuries as superficial, he could not say that the injuries were not sufficient to cause loss of consciousness. Therefore, it cannot be said as a matter of law that the injury arose out of decedent's intoxicated condition and not out of his employment.

The employer attempts to distinguish *District 141, International Association of Machinists & Aerospace Workers v. Industrial Com.*, where the majority awarded benefits under similar circumstances, because it was reasonable and foreseeable in that case that the decedent, a union officer, would be in a lounge discussing union business over several drinks. In *District 141*, decedent was killed while driving a car after spending several hours in a bar with other union officers. While the Commission in *District 141* did make a finding regarding the reasonableness and foreseeability of drinking being included within the course of the decedent's employment, the case did not turn on such a finding. The *District 141* court properly stated that the petitioner would only be denied compensation if the intoxication incapacitated the employee to the extent that he could not perform his job. The court allowed compensation because the evidence was conflicting as to whether decedent was so intoxicated at the time of his accidental death that he could no longer follow his employment. In contrast, in the case before us, there is insufficient evidence to support a finding that the decedent was so intoxicated that he could not perform his duties.

In *District 141* the majority stated "intoxication which does not incapacitate the employee from following his occupation is not sufficient to defeat the recovery of compensation although the intoxication may be a contributing cause of his injury." (79 Ill. 2d 544, 558, 404 N.E.2d 787.) The Commission here reviewed and considered all the evidence, and correctly applied the standard set out by the cases that intoxication can only be a defense if it renders the employee incapable of performing his job. Any inferences drawn by the Commission regarding the cause of decedent's fall or the level of decedent's intoxication are supported by the evidence, and, therefore, we cannot say that the decision of the Commission is against the manifest weight of the evidence.

Accordingly, the judgment of the circuit court of Macoupin County confirming the decision of the Industrial Commission is affirmed.

Judgment affirmed.

BARRY, P.J., and WOODWARD, McCULLOUGH, and KASSERMAN, JJ., concur.